**Myrna Loy Adkins DRAKE, and Robert Lee Drake, Plaintiffs-Appellants,**

v.

**Daryl Allen KING and Donna Mae King, Defendants-Respondents.**

No. 25220.

Kansas City Court of Appeals.

Missouri.

Oct. 6, 1969.

Douglas, Douglas & Douglas, Neosho, for appellants.

Johnson, Landis & Rice, Neosho, for respondents.

SPERRY, Commissioner.

This is an appeal by Myrna Loy Harleman Henry Adkins Drake, age 25, and her then husband, Robert Lee Drake, from an order of the Juvenile Court of Vernon County terminating the parental rights of Myrna Loy Harleman Henry Adkins Drake, natural mother, and of Carl Adkins, natural father of Kevin Maxwell Drake, four and one-half years of age at the time of trial. The governing statute is 211.-441, subd. 1, par. (2) (c) V.A.M.S. On October 16, 1968, a trial was had on the issues presented in a motion filed by Myrna and Robert Lee Drake praying for restoration to Myrna of parental rights. She and her then husband, Robert Lee Drake, were represented by counsel. Carl Adkins joined in the motion. The court entered the following order, on October 16, 1968: "It is the order of the court that the parental rights of Myrna Loy Harleman Henry Adkins Drake and Carl Adkins are terminated." Mr. and Mrs. Drake appealed.

It is difficult to state the various events and facts involved understandably. This is partially due to the fact that the mother of the child, Myrna Loy Harleman, was first married to one Henry, and divorced a few months later. She was then married to Carl Adkins, who had previously been married and had three or four children. Kevin was born to this marriage September 11, 1964.

On May 16, 1965, upon complaint duly filed, the Juvenile Court of Vernon County held a hearing on whether or not the children (including Kevin Adkins) in the Adkins home were being properly cared for. The Court stated that they were not gaining weight, were underfed and under-

housed, were being pushed around "from pillar to post", "just one person and then another." In the interest of the children "the court ordered them into the care of the Department of Welfare" until the parents should demonstrate they could properly care for them, at which time the children would be restored to their custody.

At the hearing it was shown that Carl Adkins was gainfully employed but that he had a drinking problem, bordering on chronic alcoholism. He had been arrested three times in 1956; once in 1963; once in 1964; and twice in 1965.

Shortly after this order was entered Kevin was placed in a foster home in the custody of a Mrs. Spencer. At this hearing she testified to the effect that, when Kevin arrived at her home on May 18, 1965, his buttocks were red, raw, and pitted from improper diapering; that he had a severe cough which required medication; that his poor physical condition was due to improper care; that he was eight and one-half months of age and poorly developed; that he could not sit up nor crawl; that he had no energy; that he could not eat or swallow any food except his formula; that he could not eat strained vegetables or strained fruits; that he progressed physically and eventually was much improved; that he left her home in (probably) October, 1965.

There was evidence to the effect that Kevin's playpen and crib were saturated with urine while in the custody of petitioners; that neighbors heard him cry at night; that petitioner was ordered to move from her apartment because she did not properly care for the baby; that he was fed skim milk.

Kevin's case was transferred to the Juvenile Court of Newton County where his custody was given to Daryl Allen and Donna Mae King, with a view to adoption. He has resided there since October, 1965. It was conceded by attorneys for petitioners, in open court, that Mr. and Mrs. King are highly respected and that they are fully

qualified to care for Kevin. They own a nice home and have a comfortable income. The case was transferred from Newton County to Vernon County prior to the date of this hearing.

Myrna was divorced from Adkins on October 4, 1965. She married Drake on November 6, 1965. A child was born to her on February 12, 1966, some four months after the marriage. Myrna admitted having had sexual intercourse with Drake prior to the divorce, and that the last child born to her is Drake's progeny.

Drake testified to the effect that he was divorced from his former wife in a foreign state; that he is the father of three children of that marriage; that he has never paid any support (as required by divorce decree) for said children since he was divorced. He works for a bridge construction company and receives $210.00 per week wages; that he and Myrna live at the trailer house home of his mother in Nevada. He is home only on weekends.

There was evidence to the effect that he was arrested for public intoxication and disturbing the peace in October, 1965; that he forfeited his bond; that he was also charged and sentenced for reckless driving, leaving the scene of an accident, destruction of city property, and resisting arrest, in 1965.

Myrna stated that she made no effort to contribute to Kevin's support from May 16, 1965, until October 4, 1965, at which time, she stated, Mr. Hartley, welfare worker in charge of Kevin's case, told her she must pay him, personally, $35.00 per week support money, which she did not have. Mr. Hartley flatly denied demanding that he, personally, be paid any sum. The trial court, apparently disbelieved Myrna's testimony in this respect. She stated that she, in September, 1966, sent a $15.00 check to the welfare department, and a check for $10.00 in October, 1966. These checks were returned to her upon the order of the Juvenile Judge of Vernon County. There is no evidence that either she or Carl Ad-

kins have ever contributed any sum towards Kevin's support since May 16, 1965, until and including the date of this hearing, March 29, 1968.

Section 211.441, V.A.M.S., provides that "The Juvenile Court may, upon petition filed as provided in other cases of children coming under the jurisdiction of the court, terminate all rights of parents to a child when it finds that such termination is in the best interest of the child and one or more of the following conditions are found to exist:

\*   \*   \*   \*   \*   \*

" (2) When it appears by clear, cogent and convincing evidence that for one year or more immediately prior to the filing of the petition \* \* \*

" (c) The parents, being financially able, have wilfully neglected to provide the child with the necessary subsistence, education or other care necessary for his health, morals or welfare or have neglected to pay for such subsistence, education or other care when legal custody of the child is lodged with others."

This is a court tried case and we review it both on the law and the evidence as in suits of an equitable nature. The judgment shall not be set aside unless clearly erroneous and due regard shall be given to the opportunity of the trial court to judge the credibility of the witnesses. Civil Rule 73.01(d), V.A.M.R. The judgment is not erroneous. The evidentiary facts are not in dispute. They establish clearly and cogently that Kevin Maxwell Adkins has been neglected by both his father and mother since May 18, 1965, and that, although they have been financially able to do so, they have willfully paid nothing toward his maintenance, care or education for more than one year prior to the commencement of this action.

The judgment is right and just. Based on the evidence, it is in the best interest of Kevin Adkins that all rights of the parents be permanently terminated.

The judgment is affirmed.

MAUGHMER, C., concurs.

PER CURIAM:

The foregoing opinion of SPERRY, C., is adopted as the opinion of the Court.

All concur.