Sharon Kay WHITE, Raymond Wilfong, Ricky Wilfong, Christine DeSpain, Ben De-Spain, Jr., Pamela DeSpain, Cherry De-Spain, and William DeSpain, Minors, under the Age of Seventeen (17) Years, Plaintiffs-Respondents,

v.

Frances DeSPAIN, Ben DeSpain and Henry Wilfong, Defendants-Appellants.

Nos. 25322–25329.

Kansas City Court of Appeals, Missouri.

April 6, 1970.

William D. Lay, Platte City, for defendants-appellants.

Don Witt, Platte City, for plaintiffs-respondents.

SPERRY, Commissioner.

This case comes to the writer by way of reassignment. It is an action instituted by the juvenile officer of Platte County for the purpose of terminating the parental rights of Frances DeSpain over Sharon Kay White, her illegitimate child whose father is unknown; of Frances DeSpain and Henry Wilfong over their children, Raymond and Ricky Wilfong; and of Ben and Frances DeSpain over their five children; Christine, Ben, Jr., Pamela, Cherry and William. These eight children are all under the age of seventeen and had been living in the home of Ben and Frances De-Spain prior to an order of the court which made them wards of the court. Thereafter, until the date this hearing was held, they had been cared for in various foster homes by authority of the juvenile court of Platte County.

This action was brought under authority of Section 211.441, RSMo 1959, V.A.M.S. The pertinent parts of said statute are as follows:

"211.441. *Court may terminate rights, when—consent, how established.*—1. The juvenile court may, upon petition filed as provided in other cases of children coming under the jurisdiction of the court, terminate all rights of parents to a child when it finds that such termination is in the best interest of the child and one or more of the following conditions are found to exist:

\*     \*     \*     \*     \*     \*

(2) When it appears by clear, cogent and convincing evidence that for one year or more immediately prior to the filing of the petition,

\*     \*     \*     \*     \*     \*

(b) The parents have willfully, substantially and continuously or repeatedly neglected the child and refused to give the child necessary care and protection. \*  \*  \*".

These cases were consolidated in the trial court and in this court.

On December 13th, 1967, an order was duly entered by the court granting the care, custody and control of all of these children to the Platte County Welfare office. They were, at that time, residing with Mr. and Mrs. DeSpain in their four room rural home in Platte County, Missouri, which belonged to Mr. DeSpain's father. On September 17th, 1968, petition for termination of parental rights was duly filed by the juvenile officer of Platte County. Before a hearing thereon and on February 12th, 1969, the court appointed Hon. William D. Lay as attorney for the parent-defendants herein. Mr. Witte, attorney at law, was appointed friend of the court. Service was had on defendants-appellants. Trial was had on March 27th, 1969, and on May 26th, 1969, the court entered its order terminating the parental rights of defendants-appellants. Defendants Ben and Frances DeSpain alone appealed.

There was a large amount of testimony heard from several witnesses. We have read and considered the entire record. We will try to state the gist of the evidence as concisely as possible and, in doing so, shall have close reference to the statement of facts appearing in respondent's brief which, we believe, fairly states the evidentiary facts. These facts come from the testimony of teachers, welfare workers, officials of Platte County and others.

Frances White gave birth to one of the children, Sharon, out of wedlock. When Sharon was seven months of age Frances married Henry Wilfong, who "was in and out of jail" all of his life. She bore him two of the children here involved, Raymond and Ricky Wilfong. Wilfong was in the state penitentiary when she got her divorce. She and DeSpain were married and they had the five children here involved, of that name. After these eight children were taken, by the welfare department, Frances and Ben decided to have another child because "people said she would die"

if she did (she had been under medical care and refused to have a recommended operation) and they "wanted to see what would happen". Not only did they have another baby but they brought a number of her brothers and other relatives into the home. (The plaintiffs contend there were nine). The evidence of the number so brought in is unclear but it is clear that they were listed for income tax purposes.

DeSpain had been charged with issuing a bad check and owed $170.00 grocery bill when the children were taken and still owed it at the time of trial. He also owed $900.-00 on a repossessed truck. He had been employed steadily at take home pay of $120.00 per week, but had not paid, or offered to pay, anything for support of these children after they were taken from the home, December 13th, 1967.

The home in which the children lived prior to their removal was a four room house; no water, even in a cistern or well; the house stank and could be sensed from afar; the sheriff gagged while on the outside; the floor was covered with tin cans, wearing apparel and, on the outside, there was trash, glass and debris. When the children were taken their physical condition was bad. The bedding and house stank of urine, sour milk and filth. All except Sharon required medical treatment.

William had an enlarged abdomen, severe diaper rash, a scaly body, bronchitis, and was on the verge of having rickets.

Cherry had a cold, diaper rash and an enlarged abdomen due to malnutrition.

Pamela had an enlarged abdomen, malnutrition, a skin rash, an infected foot, and bronchitis.

Ben Jr. had an enlarged abdomen, welts over his privates, thighs and buttocks, and bronchitis.

Christine had an enlarged abdomen and a cold.

Ricky, age 9, had an enlarged abdomen, a slight cold, and welts over his private

area and buttocks. He also had a ruptured navel since birth.

Raymond was ruptured in the groin area, and was welted in that area and on the buttocks.

All were extremely dirty, were wearing summer clothing (in December) and two were barefoot. The blankets wrapped around the baby were filthy, saturated with urine, and stank so that the officers had to put the car windows down in order to breathe.

The family was receiving commodities. There was evidence to the effect that their living conditions and the condition of the children had been substantially the same for a year or two prior to December 13th, 1967. The children had been neglected over a considerable period of time. Their teachers sent clothing and had, at times, requested that they be bathed and cleaned because they stank so that other children called them such names as "stinky". One of them wore the same pants for two days after he had defecated in them.

The children were absent from school a great deal of the time, so much so that school officials complained thereabout.

After the children were taken into the custody of the court the evidence is to the effect that the parents were permitted to see them from time to time and to visit with them. In fact, two of them lived in the DeSpain neighborhood. The DeSpains', at no time, offered to pay anything for support of the children from and after December 13th, 1967.

They did clean up the house on the inside but it remained on the outside much as it did when the children were taken. After the children were taken from their custody by court order, the DeSpains' deliberately had another baby just to see what would happen, and they brought a number of their relatives' children into the home, perhaps as many as nine.

In Helms v. Clay County Juvenile Court, Mo.App., 450 S.W.2d 480, we said that proceedings in juvenile court are governed by equitable principles and the purpose of our juvenile laws is the protection of and support of neglected children.

In this order terminating parental rights of the DeSpains' the court found that they "willfully, substantially, continuously and repeatedly neglected said child (children) and refused to give said child (children) necessary care and protection for more than one (1) year immediately prior to the filing of the petition herein".

The court also found that the best interest and welfare of the children will be served by an order terminating parental rights of defendants (DeSpains') to their children.

These findings comply with the requirements of the statute governing this case and are fully supported by the evidence herein.

The conditions shown here are certainly no better than those shown to exist in Drake v. King, Mo.App., 446 S.W.2d 445.

The judgment is affirmed.

MAUGHMER, C., concurs.

PER CURIAM:

The foregoing opinion of SPERRY, C., is adopted as the opinion of the court.

SHANGLER, P. J., CROSS and HOWARD, JJ., and RICHARD SPRINKLE, Special Judge, concur.