**Will R. EASTES, Appellant/Respondent,**

v.

**Margaret Jeanne EASTES,
Respondent/Appellant.**

Nos. 39895, 39901.

Missouri Court of Appeals,
Eastern District,
Division Three.

Nov. 6, 1979.

Hannegan, Knight, Kennedy, Schoenberg & Weber, Inc., Claude C. Knight, St. Charles, for appellant/respondent.

W. Morris Taylor, Taylor, Schumaier & Suddarth, St. Louis, for respondent/appellant.

CLEMENS, Senior Judge.

Consolidated cross-appeals from a modification order. Husband-father (hereafter plaintiff) moved for a change of custody of the parties' two children and has appealed the denial thereof. Wife-mother (hereafter defendant) sought an increase in child-support allowances which the court denied and she has appealed. She also sought an allowance for attorney's fees, granted only in part, and both parties have appealed that part of the order.

Plaintiff contends the order denying him custody was against the weight of the evidence since he had remarried and had a proper home for the children, that defendant had failed to provide moral and religious training for the children and had exposed them to immoral conduct by allowing her boyfriend to stay in her home overnight. Defendant contends on her appeal that the refusal to increase her support payments was against the weight of the evidence because the children's expenses

had increased. She also contends the $1,000 for attorney's fees was inadequate.

We first consider plaintiff's contention the court erred in refusing to grant him primary child custody. Plaintiff and defendant were divorced in March of 1973. He was then an electrical engineer and defendant was completing her last semester in college. She was granted custody of their eight-year-old daughter and four-year-old son, subject to visitation and temporary custody by plaintiff. He then agreed to pay $30 a week support for each child. In July of 1974 the court modified the decree to permit defendant to remove the children from Missouri, and plaintiff was granted custody during summers and on alternate holidays. Defendant then moved with the children to Indiana, taught high school and the children attended public school. At first she lived with her mother but later rented a home where each child had its own bedroom. Until a year before trial defendant had allowed Ward Beckley, to whom she was engaged to be married, to spend some nights at her home, sometimes on a couch and sometimes in her bedroom. The children were aware of Beckley's overnight stays and knew he had slept in defendant's bedroom.

When the children visited plaintiff and his new wife during the summer of 1975 plaintiff learned of defendant's relationship with Beckley. He phoned and requested her to stop allowing Beckley to stay at her home overnight with the children present. Defendant told him he had no right to make such a request. Plaintiff secretly recorded this conversation on tape and it was heard at trial.

Plaintiff then filed the present motion to modify asking for custody. In turn defendant moved to modify the divorce decree to increase child support.

Evidence at trial showed plaintiff had remarried and was living with his new wife in a four-bedroom home in St. Charles. They attended church regularly and had reputations of high moral character. Plaintiff was an electrical engineer; his new wife was attending college and testified she was fond of the children. The children said they loved their father and were treated well by him and his new wife; they had many friends in St. Charles, and had done well in school there.

Defendant testified she had become a high school teacher. She and the children lived in a three-bedroom home on the next street from her mother, who helped with the children. She did not take the children to church because they did not want to go, and they felt their father had forced it on them. The children were still doing well in school.

Defendant testified she was engaged to Beckley and was planning soon to marry him. She admitted that until a year ago—but not since then—she had at times allowed Beckley to stay in her home overnight, but she insisted the children were unaware of a sexual relationship. She never went into the bedroom in front of them, and they had never been seen in any sexual embrace. Both children liked Beckley, and he had been the only man in their new home.

A psychiatrist testified for defendant saying he had seen her 30 to 35 times before the divorce and had found nothing to indicate she was an unfit mother. He had also seen plaintiff four or five times and believed him to be immature, self-centered and unable to understand the children's problems. The doctor also testified he believed the children's knowledge of Beckley's former overnight stays had had no harmful effect on them. This was contradicted by two ministers testifying for plaintiff, who felt such conduct would harm the children's morals.

The parties' seven-year-old son testified he knew Beckley had spent the night there and had seen him with defendant in the bedroom. He testified he would rather live with his mother. The twelve-year-old daughter stated she had seen her mother and Beckley together in the bedroom once, and both were wearing pajamas. She did not believe they were having sexual relations and said Beckley was no longer spending nights at their home. She preferred to

attend school in Indiana and spend summers in St. Charles.

Not every change in circumstances calls for a transfer of child custody, only those requiring modification to serve the child's best interests. *Blair v. Blair,* 505 S.W.2d 444(3) (Mo.App.1974). And there is a rebuttable presumption the custodian remains suitable. *In re Marriage of Britton,* 574 S.W.2d 475(1–3) (Mo.App.1978). In our review we defer to the trial court's judgment unless it conflicts with the weight of the evidence and discloses a manifest abuse of discretion. *Murphy v. Carron,* 536 S.W.2d 30 (Mo.1976); *E.C.S. v. J.D.L.,* 529 S.W.2d 423(1)(Mo.App.1975).

As to plaintiff's claim that he had remarried and was able to provide the children a good home, this factor alone will not support a change in custody. Under Section 452.410, RSMo.1969, the changed circumstances must be those of the child or the custodian, and not the noncustodial party. Evidence about plaintiff's home is "pertinent only in determining whether that home constitutes an acceptable repository for the child and not as evidence supporting any need for change." *Klaus v. Klaus,* 509 S.W.2d 479(1–5) (Mo.App.1974).

Plaintiff further contends defendant's failure to attend church with the children, thereby failing to provide moral or religious guidance, is a change of circumstances. However, as we noted, in *Klaus,* supra (12): "Moral training is not dependent on formal religious services nor do we know of any rule of law that the absence of formal religious training warrants a change of custody." This factor alone does not require a transfer of custody.

Plaintiff also relies on evidence of defendant's relationship with Beckley to satisfy the statutory standard. While he concedes the mere existence of extramarital sexual conduct, without an injurious effect on the child, does not render a parent an unfit custodian (*In re Marriage of J. H. M.,* 544 S.W.2d 582(2) (Mo.App.1976) he argues that defendant's conduct has injured the children's morals. At trial the children testified they "saw nothing wrong" in their mother's relationship with Beckley. Plaintiff argues that this testimony shows the children are no longer able to distinguish between their mother's relationship with Beckley and his own relationship with his new wife.

We find this testimony fails to point convincingly to the conclusion that defendant's relationship with Beckley has had an injurious effect on the children. Neither child was aware defendant and Beckley were having sexual relations. Defendant testified she was planning to marry Beckley soon and the court was entitled to take this into consideration. And, the court had the opinion of the psychiatrist that the children's knowledge of Beckley's overnight stays, even in defendant's bedroom, would not harm them. We hold the trial court did not abuse its discretion in finding no harmful effect upon the children constituting "changed circumstances" within the meaning of Section 452.410. Finally, the court heard each child express a desire to remain in the mother's primary custody. While this preference is not determinative, the court was obliged to consider it. *Kanady v. Kanady,* 527 S.W.2d 704(4, 5) (Mo.App. 1975).

Having reviewed the evidence before the trial court we cannot find it abused its discretion or erroneously applied the law. The judgment denying plaintiff's motion to modify child custody provisions of the decree will be affirmed. We now consider the monetary issues.

As to child support and attorney fee allowances: Plaintiff had net monthly earnings of $1,172. He had monthly household expenses of $793, personal expenses of $533, and expenses of $55 for the children. As a teacher defendant had net monthly earnings of $494. She had monthly household expenses of $316, children's expenses of $405 and personal expenses of $150, for a total of $871 a month. This is a classic example of a divorced family not having enough income to maintain separate households. There was no way the trial court

could fully meet the parties' expectations and had to modify the desires of each.

Defendant assigns error to the trial court's order refusing to increase child support payments, claiming the evidence demonstrated that the children's expenses had increased due to growth, education, medical needs and inflationary trends. Sec. 452.370, RSMo.1978 provides that "the provisions of any decree respecting maintenance or support may be modified only . . upon a showing of changed circumstances so substantial and continuing as to make the terms unreasonable." Changed circumstances may exist due to the growth of the children or to the dollar's declining value. *Plattner v. Plattner*, 567 S.W.2d 139(8) (Mo. App.1970). But these factors do not call for a modification unless they make the prior support order unreasonable. Section 452.-370 "was enacted to implement a stricter standard for modification, thereby discouraging repeated and insubstantial motions for modification." *Plattner*, supra (1–3). As with the custody determination, the proceedings are examined only for abuse of discretion or misapplication of the law. *Murphy*, supra. The evidence did not clearly show plaintiff was better able than defendant to pay the increased expenses. Furthermore, defendant's monthly expenses for the children experienced a sharp and unexplained increase—from $291 to $405—from August 1975 to April 1976. The trial court was free to judge the credibility of her expense testimony and we "defer to the trial court's vantage with respect to the credibility of the witnesses." *Seelig v. Seelig*, 540 S.W.2d 142(3–4) (Mo.App.1976). If the trial court did not fully believe defendant's expense testimony plaintiff would be paying almost all the children's expenses except their share of household expenses, and the award would remain adequate. Also, during the summer months defendant receives one-half of the support award although many of the expenses are borne by plaintiff. The record does not show the court manifestly erred in finding the original award was reasonable.

As to the $1,000 attorney fee allowance, plaintiff claims he was forced to seek modification as to custody because of defendant's immoral conduct and therefore it was error to allow her any attorney's fees. Defendant upholds that ruling because she was financially unable to pay her attorney's fees and plaintiff was better able to do so. Plaintiff's argument has little merit, especially since we have found he failed to demonstrate injury to the children's moral character. We uphold the judgment against plaintiff for $1,000 attorney's fees. Defendant's attorney testified he had spent 62 hours on the case, charging $50 an hour, for a total of $3,100. Defendant had paid him $2,000, leaving $1,100 unpaid. In determining defendant's contention that the $1,000 allowance was inadequate, we are mindful of *Murphy v. Carron*, supra, and *Larison v. Larison*, 524 S.W.2d 159(11–13) (Mo.App.1975). A trial court need not award the full amount of attorney's fees but may award a reasonable amount considering the comparative financial positions of both parties. *Brueggemann v. Brueggemann*, 551 S.W.2d 853(11–12) (Mo.App.1977). As between the parties, plaintiff was not in a substantially better position to pay the attorney's fees than was defendant.

Judgment affirmed.

DOWD, P. J., and REINHARD and CRIST, JJ., concur.