In the Interest of J. J. M., male, age 5.

No. 40797.

Missouri Court of Appeals,
Eastern District,
Division Three.

Dec. 26, 1979.

Larry G. Mittendorf, Union, for appellant.

Prudence L. Fink, Chas. R. Cuntz, Daryl K. Hartley, Union, for respondent.

CRIST, Judge.

Termination of parental rights under § 211.441 RSMo. 1969. We affirm.

The trial court found the following conditions, paraphrased below, which warranted the termination of parental rights under § 211.441 RSMo. 1969:

1. The best interest of the juvenile in question, J. J. M., will be served by terminating the parental rights of his father and mother.

2. For more than one year prior to the filing of the petition to terminate her parental rights to J. J. M., mother wilfully neglected to provide him with suitable housing, clothing, and food, abandoned him, and from February 23, 1976, through March 1, 1977, neglected to pay for his subsistence while he was in the custody of mother's second husband, George, although she had the financial ability to do so.

3. Father knew shortly after J. J. M.'s birth in 1971 that he had a son. He abandoned the child in 1971 and prior to March 1, 1977, never exercised any parental duties or care. Furthermore, although father was gainfully employed and financially able throughout J. J. M.'s life to provide J. J. M. with the necessary subsistence, father has wilfully neglected to pay for such subsistence.

4. Mother is unfit as a mother by reason of debauchery and lewd and lascivious behavior, which conduct has clearly manifested that it is detrimental to the well-being of J. J. M.

Mother and father complain that there was no clear, cogent, and convincing evidence to support the findings and conclusions of the court.

■ Our review is governed by *Murphy v. Carron*, 536 S.W.2d 30, 32 [1] (Mo.banc 1976). With reference to the sufficiency of the evidence, the evidence in support of the judgment must be taken as true, together with all the reasonable inferences therefrom. *L. v. Jackson County Juvenile Court*, 544 S.W.2d 330, 332 [4] (Mo.App.1976). With our scope of review in mind, the transcript shows ample evidence to sustain the findings of the trial court.

■ J. J. M. was born in wedlock on August 9, 1971, to father and mother, although father and mother had been separated for about eight months prior to J. J. M.'s birth and father did not see J. J. M. until at least 5 years later. In October, 1971, father and mother were divorced, and mother was awarded custody of J. J. M. In December, 1971, mother married George.

From December, 1971, until October, 1975, J. J. M. lived with his mother and step-father (George). During this time, on a regular basis, mother allowed dirty diapers and human feces to lie around the house without timely and proper disposal. She further neglected to provide J. J. M. with balanced meals three times a day.

In October, 1975, mother took J. J. M. and Billie, her son by George, out of George's home and ran off with her paramour without leaving word where she had gone. Approximately five weeks later, George and J. J. M.'s maternal grandmother found J. J. M.

in the middle of the night in a trailer in Grant City, Missouri, asleep on the floor next to Billie. It was cold, but J. J. M. had no pajamas or blanket on. He was extremely dirty. He had lost weight and had head lice. His mother was in bed with her paramour in the bedroom of the trailer. J. J. M. and Billie were taken from this environment by their maternal grandmother and placed back in George's home. J. J. M. continued to live in George's home and not with his mother through the trial in the court below.

On February 23, 1976, mother divorced George, left J. J. M. in his care and custody, and gave written consent for George to become J. J. M.'s legal guardian. George was subsequently appointed J. J. M.'s legal guardian by the probate court. From the date of her divorce from George through the first week of August, 1976, mother occasionally would visit J. J. M. She would sometimes buy him candy or a hamburger. She made practically no effort to buy him clothes or otherwise contribute to his support and maintenance.

Meanwhile, George remarried. His home is a satisfactory place for small children. Billie, J. J. M.'s half-brother with whom he has lived most of his life, lives there. George and his new wife are "important people" to J. J. M., although not blood kin. Billie, who is blood kin, is an important person to J. J. M. This is J. J. M.'s family unit.

In November, 1976, father walked back into the picture, having been gone since January, 1971. He and mother left Missouri without attempting to visit or take J. J. M. with them and then remarried. On December 2, 1976, father and mother filed in the probate court a motion to terminate George's guardianship. On March 1, 1977, the juvenile officer filed this petition to terminate the parental rights of mother and father.

Section 211.441 provides that a court may terminate parental rights when it finds that termination is in the best interests of the child and one or more of several conditions,

i. e. abandonment, neglect, nonsupport, improper conduct, or mental incompetency, are found to exist. While there was evidence on all of the conditions found by the trial court, all of such evidence points to neglect. Without holding that there was insufficient evidence on any other condition, we do hold that there was ample evidence to sustain the judgment of the trial court on the facts relating to neglect of J. J. M. *White v. DeSpain*, 453 S.W.2d 697 (Mo. App.1970); *Drake v. King*, 446 S.W.2d 455 (Mo.App.1969). We defer to the court "below".

The judgment is affirmed.

DOWD, P. J., and REINHARD, J., concur.