HUSKY INDUSTRIES, INC., a Delaware Corporation, Plaintiff-Respondent,

v.

CRAIG INDUSTRIES, INC., a Missouri Corporation, Defendant,

and

D. C. Craig, Defendant-Appellant.

No. 11717.

Missouri Court of Appeals,
Southern District,
Division One.

June 19, 1981.

Kenneth A. Wagoner, Moore & Brill, P. C., West Plains, for defendant-appellant.

Clyde A. Butts, West Plains, for plaintiff-respondent.

TITUS, Judge.

Plaintiff Husky Industries, Inc., sued defendants Craig Industries, Inc., and D. C. Craig in the Circuit Court of Howell County via a four-count Second Amended Petition. Counts I, II and III of the pleading sought of Craig Industries, Inc., specific performance of an alleged contract for the sale of its Mountain View charcoal plant, or, in the alternative, damages for breach of the agreement. By Count IV, plaintiff asked money damages from D. C. Craig averredly resulting from Craig's misrepresentation anent his authority to contractually bind Craig Industries, Inc., to sell the charcoal plant and real estate. Following a court trial, judgment in favor of defendant Craig Industries, Inc., was entered on Counts I, II, and III; judgment on Count IV was rendered in favor of plaintiff and against D. C. Craig in the sum of $14,400. Only D. C. Craig has appealed.

Defendant D. C. Craig was in the business of manufacturing charcoal in two plants—one at Mountain View, the other at Summersville. The two businesses were incorporated into a single corporation in 1972 under the name of Craig Industries, Inc. Craig (as president), his wife, daughter, son-in-law and Kay Clarkson constituted the corporation's board of directors and sole shareholders. Via Leon Gideon, its vice president of production, plaintiff had long expressed interest in purchasing the plants of Craig to augment its business of producing and selling charcoal briquets. On September 12, 1977, "Craig Charcoal Industries," via a written agreement signed on its behalf only by "D. C. Craig (Seller)," contracted to sell for two years 1,500 tons of charcoal per month to "The Kingsford Company," plaintiff's competitor. According to trial-testimony estimates of Mr. Craig, the amount of charcoal contracted to be sold, exceeded the output capabilities of both Craig's Mountain View and Summersville plants. Nevertheless, seven days later or on September 19, 1977, Mr. Craig telephoned Mr. Gideon, plaintiff's vice president, to inquire if the plaintiff corporation

was interested in buying the Mountain View plant. Upon receiving an affirmative reply, Messrs. Craig and Gideon arranged a meeting for the morrow.

Craig, Gideon and plaintiff's attorney met on September 20, 1977, inspected and inventoried the Mountain View plant. In anticipation of a deal being made, the lawyer had prepared a partially completed typewritten "Letter Offer to Purchase" wherein "Dwane [sic] Craig and ——— Craig, his wife, d/b/a Craig Charcoal Company" were designated as sellers. After the price and terms of the sale and purchase of the plant (including both real and personal property) had been reached, the attorney completed the purchase offer form in his handwriting. When Craig disclosed he did not personally own the property to be sold, the typed names of the sellers, supra, were marked out and "Craig Industries, Inc." was inserted as the seller. "D. C. Craig, Pres." signed the completed form on behalf of the corporation. Inter alia, the form stated that plaintiff's attorney would prepare a "formal contract for execution within ten (10) days from this date." Mr. Gideon gave Mr. Craig his $25,000 check as the down payment on the transaction. The check was made payable to "Craig Industries, Inc." For inclusion in the formal contract to be prepared, the attorney obtained the names of the selling corporation's board of directors and stockholders. He also received from Mr. Craig possession of the abstract of title to the real estate being sold.

Under date of September 27, 1977, the attorneys for Craig Industries, Inc., wrote the plaintiff's lawyer to the effect that the corporation's board of directors had met that date and "voted to reject the offer." Mr. Gideon's uncashed $25,000 check was returned with the letter. Plaintiff thereafter commenced suit.

Craig's sole point relied on in this appeal reads: "The trial court erred in entering judgment against D. C. Craig on the theory that he, as agent, exceeded his authority and should be held liable as being the party in the best position to know of his lack of authority, because in so holding the court erroneously announced and applied the law to the facts, in that all facts touching D. C. Craig's lack of authority were equally within the knowledge of both parties, and [plaintiff] had actual or presumptive knowledge that D. C. Craig lacked authority to bind his principal."[1]

In an appeal from a court-tried case, this tribunal reviews the cause upon the law and the evidence under Rule 73.-01(c), V.A.M.R., giving due regard to the better opportunity of the trial court to have judged the credibility of the witnesses. The judgment nisi may not be set aside here unless it is against the weight of the evidence or wrongly applies or declares the law. Our authority to set aside a judgment rendered below as being against the weight of the evidence, must be exercised with caution and founded upon a firm belief that it is erroneous. *Byars v. Byars*, 593 S.W.2d 656, 657–658[1] (Mo.App.1980). Moreover, we must heed the admonition, with reference to the sufficiency of the evidence, that the evidence, and all reasonable inferences flowing therefrom, must be taken as true [*In Interest of J.J.M.*, 592 S.W.2d 862, 863[1] (Mo.App.1979)], bearing in mind that the judgment of the trial court is presumed to be correct [*Prudential Property and Cas. Ins. Co., Inc. v. Cole*, 586 S.W.2d 433, 434[1] (Mo.App.1979)] and that the trial judge, as trier of the facts, had leave to believe none, part or all of the testimony of any witness. *Cave v. Cave*, 593 S.W.2d 592, 595 (Mo.App. 1979). Although the trial court was re-

---

1. By answer, Craig, inter alia, affirmatively pleaded the statute of frauds (§ 432.010, V.A. M.S.) as required by Rule 55.08, V.A.M.R. However, at trial he did not undertake to prove the real estate to be sold was not sufficiently described in the "Letter Offer to Purchase" to satisfy the statute's requirements and thus relieve him of liability. E.g., *Byers v. Zuspan*,

241 Mo.App. 1103, 264 S.W.2d 944 (1954); 3 C.J.S. Agency § 377, pp. 198–199. Likewise, he waived such a defense, if so, by not preserving the issue as a point relied on in his appellate brief. *State ex rel. Mo. Pac. R. Co. v. Moss*, 531 S.W.2d 82, 86[7] (Mo.App.1975); *Gonseth v. K & K Oil Company*, 439 S.W.2d 18, 20[1] (Mo.App.1969).

quested to and did make certain specific findings of fact, it was not asked to and did not give any findings of fact on the issue here presented. Consequently, all fact issues affecting this appeal are presumed to have been found in accordance with the court's judgment. Rule 73.01(a)(2), V.A.M.R.; *Mize v. Sims*, 516 S.W.2d 561, 563–564[1] (Mo.App.1974).

■ Having represented himself as an agent of a disclosed principal, an individual who purports to contract in the name of his principal without or in excess of his authority to do so, becomes personally subject to liability to the other contracting party. Unless the agreement also expressly binds him personally, the liability of the agent is not predicated upon the contract itself, but rather upon the agent's breach of the express or implied covenant or warranty of authority. The individual liability of the agent is fixed unless he manifests that he does not make such a warranty or the other contracting party knows the agent is not so authorized. *Griswold v. Haas*, 277 Mo. 255, 261, 210 S.W. 356, 357[1] (1919); II Restatement of the Law of Agency, § 329, p. 725; 3 Am.Jur.2d, Agency, § 298, pp. 657–658; 3 C.J.S. Agency §§ 372 and 373, pp. 194–197. The agent is personally liable even if he acts in the utmost good faith and honestly believes he was authorized and regardless of whether he has falsely represented his authority with intent to deceive. *Robinson v. Pattee*, 359 Mo. 584, 588, 222 S.W.2d 786, 788[5] (1949); 3 C.J.S. Agency § 374, p. 197. Although it may not be unlawful for a person to agree to convey and sell property he does not presently own but expects to acquire, yet if he unqualifiedly undertakes to perform that which he later finds he cannot do, he is held to the liability which the law imposes upon the contract breaker. *Silliman v. Chrisman*, 584 S.W.2d 441, 447 (Mo.App.1979). As stated in the Restatement, supra, Comment *a.*, p. 726: "Where an agent purports to make a contract . . . for a principal, the other party thereto may reasonably assume from such conduct that the agent represents that he has power so to bind the principal. Hence, the rule stated in this Section [i.e., 329] results from the

mere fact that the agent purports to act as such, although he makes no express representation as to his authority." Though the agent acts bona fide, yet if he has no authority he still does a wrong to the other party. If that wrong produces damage to the other party, owing to his confidence in the truth of an express or implied assertion of authority by the agent, it is deemed just and proper that the agent who makes such an assertion should be personally liable for the consequences, rather than that the damage should be borne by the other party who has been misled. 3 Am.Jur.2d, Agency, § 299, pp. 658–659.

The sum and substance of the trial testimony from both sides was that Mr. Craig at no time, either before or after revealing his principal was a corporation, said or indicated anything to the effect that he possessed or did not possess authority to make an agreement binding on the corporation. Likewise, the evidence was void of even a suggestion that plaintiff's vice-president and attorney were aware or should have known of any limitation on the authority ostensibly possessed by Mr. Craig to make a binding contract on behalf of the corporation he purported to represent. In short, nothing was mentioned or discussed regarding the apparent authority Mr. Craig was using to contract on behalf of the corporation.

■ Counsel for Mr. Craig cite the fact that "the attorney-client relationship is an agency relationship governed by the same rules which apply to other agencies." *Southwestern Bell Tel. Co. v. Roussin*, 534 S.W.2d 273, 276[4] (Mo.App.1976). From this, defendant's counsel argues that when plaintiff's lawyer-agent obtained the names of the board of directors of Mr. Craig's corporate principal and other related information for inclusion in the anticipated formal contract to be executed by the involved principals, the attorney-agent thereby manifested a mutual intention and understanding that no binding agreement was to come into esse until the formal contract had been prepared and duly executed by the

principals. Of course, a corporation, like any artificial legal entity in dealing with others, can act only by and through its authorized agents. *State ex rel. State Highway Commission v. Baker*, 505 S.W.2d 433, 436 (Mo.App.1974); 19 C.J.S. Corporations § 999, p. 463. If defendant's argument obtained in all circumstances, it would become impossible for principals, corporate or otherwise, to do business via agents or to have agency-made agreements bind or benefit principals until such were formally finalized. But the question here is not whether defendant Craig did, in fact, have authority to bind his principal via the agreement he made with plaintiff's agent. That question was answered by the trial court in favor of Craig's purported principal and has not been appealed. Rather, the questions for us are whether defendant Craig, representing himself as an agent, undertook to contract in the name of his disclosed principal without or in excess of his authority to do so; whether plaintiff's agents were unaware of such lack of authority; and whether plaintiff was damaged by defendant Craig's breach of his express or implied covenant or warranty of authority. The ruling of the trial court makes it patent that it answered each question in the affirmative. Under the facts and circumstances presented, we cannot say of the trial court's judgment on Count IV of the petition that there was no substantial evidence to support it, that it is against the weight of the evidence, that it erroneously declares the law or that it erroneously applies the law. We harbor no firm belief that the judgment nisi was wrong. Therefore, in compliance with the mandate in *Murphy v. Carron*, 536 S.W.2d 30, 32[1] (Mo. banc 1976), the judgment is affirmed.

GREENE, P. J., and FLANIGAN, J., concur.