In re the MARRIAGE OF Melinda Ann SCOBEE and Larry Wayne Scobee.

Melinda Ann SCOBEE, Appellant,

v.

Larry Wayne SCOBEE, Respondent.

No. 13069.

Missouri Court of Appeals,
Southern District,
Division One.

March 16, 1984.

Devon F. Sherwood, Springfield, for appellant.

Robert S. Wiley, Crane, for respondent.

CROW, Judge.

The marriage of appellant ("Ann") and respondent ("Larry") was dissolved June 1, 1981. The judgment awarded custody of their only child, Amanda Brooke Scobee ("Mandy"), born September 3, 1978, to Ann. Larry was awarded reasonable visitation rights, and was ordered to pay Ann $50 per month child support.

On May 20, 1982, Ann filed a motion to modify the judgment, praying that the child support be increased to $300 per month. She also asked that Larry be ordered to pay her attorney's fee.

Larry countered with a motion to modify, praying that he be granted custody of Mandy, and that his duty to pay child support be terminated.

An evidentiary hearing was held November 30, 1982, after which the trial court entered judgment transferring custody of Mandy to Larry. Ann was awarded reasonable visitation rights and certain specific periods of temporary custody. Larry's child support obligation to Ann was ordered terminated upon payment of a $300 arrearage. Ann's request for attorney fees was denied.

Ann appeals, asserting the trial court erred in (1) changing custody of Mandy, in that the evidence was insufficient to establish a change in the circumstances of Ann or Mandy, and (2) refusing to increase the child support, in that there was substantial uncontroverted evidence that Ann's expenses for raising Mandy had substantially increased, rendering the original award of $50 per month unreasonable.

■ In considering the first assignment of error, we observe that a trial court's judgment ordering a change in custody of a child may be reversed on appeal only if the judgment is not supported by substantial evidence, is against the weight of the evidence, or results from an erroneous declaration or application of the law. *In re the Marriage of Griswold*, 623 S.W.2d 560, 561[1] (Mo.App.1981); *Galeener v. Black*, 606 S.W.2d 245, 246–47[2] (Mo. App.1980). Where there is a conflict in the evidence, the trial court has the prerogative to determine the credibility of the witnesses, accepting or rejecting all, part or none of the testimony. *Ware v. Ware*, 647 S.W.2d 582, 583–84[2] (Mo.App.1983); *Trunko v. Trunko*, 642 S.W.2d 673, 674–75[2] (Mo.App.1982). With reference to the sufficiency of the evidence, we must accept as true the evidence and permissible inferences favorable to the judgment, *In the Interest of J.J.M.*, 592 S.W.2d 862, 863[1] (Mo.App.1979), and disregard the contradictory evidence, *Ware*, 647 S.W.2d at 584[4]; *Prudential Property and Casualty Insurance Co., Inc. v. Cole*, 586 S.W.2d 433, 434 (Mo.App.1979).

At the time the marriage was dissolved, Ann was living with her mother at Nixa, and was employed in a supervisory position at a bank in Kimberling City. While Ann

worked, Mandy was kept by an individual in the latter's home.

Some months later, Ann began living with a man, Phil, at Lindenlure, a small community near Sparta. As best we can deduce from the record, this occurred sometime in autumn, 1981. According to Ann, she and Phil had fallen in love and discussed marriage, and they began sharing a home to see whether their love "could endure the trials of every day living together." Mandy lived there with them. This arrangement lasted approximately three months.

Ann then moved to a house in Springfield, where she resided for the 11 months immediately preceding the modification hearing. At the time of the hearing, Ann was employed at Springfield Paramedics as office manager and part-time paramedic. While Ann worked, Mandy was left at a licensed day-care center in Springfield during the day, and with a "babysitter, a family member," at night. Ann explained that although Phil was her fiance, he did not reside at her Springfield house "on a regular basis, at this time."

Larry had remarried prior to the modification hearing, and was living with his new wife and her 9-year-old son in a modern, 3-bedroom home on 7 acres near Reeds Spring. Larry testified his wife works "half a day." Larry explained that if he were awarded custody of Mandy, his wife's sister would take care of Mandy while his wife was at work, or Mandy could stay at a licensed day-care center near Reeds Spring.

The reasonable visitation rights granted Larry by the dissolution decree were generously heeded by Ann. Initially, she allowed Larry to have custody of Mandy on alternate weekends and one night a week. Later, Ann allowed Larry to have Mandy "about every weekend."

Viewed most favorably to the result below, the evidence showed that in December, 1981, Ann advised Larry "that she did not want Mandy all the time." Ann was tired and confused, and told Larry she "just couldn't handle it." By agreement, Larry took Mandy to his home and, during the first four months of 1982, had custody of her more than half the time. Altogether, Larry had custody of Mandy 165 nights during the first 11 months of 1982.

Ann admitted seeking treatment for a "psychiatric condition" in March, 1982, being hospitalized "a short period of time." Ann related that she was depressed by financial problems and stress from the dissolution. She made one suicide attempt.

Larry recalled Ann mentioning suicide three times, the first being in December, 1981, and the last "around April," 1982.

■ At Larry's request, the trial court interviewed Mandy in chambers, on the record, in the presence of counsel. § 452.-385, RSMo 1978. Little was learned, but Mandy did express a preference for Larry when asked where she would like to live most of the time. The reasons she gave were: (1) " 'Cause I don't want to live with my mama," and (2) Larry said he would give her raisins, bubble gum and candy. In view of Mandy's tender years, her preference was entitled to scant, if any, weight. *Johnson v. Johnson*, 526 S.W.2d 33, 35[1] (Mo.App.1975).

■ Ann reminds us that the authority to order a change of custody emanates from § 452.410, RSMo 1978, and that it was incumbent on Larry to prove that a change had occurred in the circumstances of Mandy or Ann since the decree of dissolution, and that the modification was necessary to serve Mandy's best interests. *Henderson v. Henderson*, 622 S.W.2d 7, 8–9[1] (Mo.App.1981). Ann correctly observes that the fact that Larry had remarried and had a physically suitable home was not a basis for modification, as that change was in the circumstances of the noncustodial parent, rather than the child or the custodian. *Eastes v. Eastes*, 590 S.W.2d 405, 408[4] (Mo.App.1979). Larry's circumstances were pertinent only in determining whether his home constituted an acceptable repository for Mandy, and not as evidence supporting any need for modification. *Id.* at 408[5].

Were Larry's circumstances the only ones that had changed, Ann's first assignment of error would have merit.

The evidence, however, established several changes in Ann's circumstances. She suffered emotional problems requiring psychotherapy, lived in three different communities during the first eight months after the dissolution, attempted to commit suicide, established residence for herself and Mandy with an unrelated adult male, and manifested a desire not to have custody of Mandy to the extent contemplated by the dissolution decree.

Mandy's circumstances likewise changed after the dissolution. In addition to the various living arrangements Mandy experienced with Ann, Mandy spent increasing amounts of time with Larry, including the greater part of the first four months of 1982, and an aggregate 165 nights during the first 11 months of that year.

Besides the above changes, there was evidence that during the three months immediately preceding the modification hearing, Mandy cried "practically every time" Larry told her it was time for him to take her back to Ann.

■ Ann argues that the trial court misconceived the applicable standard for changing custody, in that the court placed undue emphasis on Mandy's preference for Larry. We disagree. In its findings, the trial court did take note of Mandy's wishes. However, the court specifically found that changes had occurred in the circumstances of Mandy and Ann, and that modification of the original custody order was necessary to serve Mandy's best interests. This is the proper test. § 452.410, RSMo 1978.

■ Given the deference we must accord the decision of the trial court, *Wideman v. Wideman*, 628 S.W.2d 693, 694[1] (Mo.App. 1982), and recognizing that the trial court was in a better position not only to judge the credibility of the parties directly, but also their sincerity and character and other trial intangibles which may not be completely revealed by the record, *E____ (S____) v. E____*, 507 S.W.2d 681, 684[4] (Mo.App.1974), we find the changes in the circumstances of Ann and Mandy sufficient to support the trial court's determination that the modification it ordered was necessary to serve Mandy's best interests. Even if each of the changes individually would not have justified transfer of custody—a point we need not decide—the changes were, in the aggregate, more than enough. Accordingly, we reject Ann's first assignment of error.

Her second point pertains only to the denial of her request for an increase in child support. Inasmuch as we uphold the trial court's decision to change custody of Mandy from Ann to Larry, the second point is moot.

Judgment affirmed.

GREENE, C.J., FLANIGAN, P.J., and TITUS, J., concur.