**William R. HALL, Appellant,**

v.

**Mary N. HALL, Respondent.**

**No. 37636.**

Missouri Court of Appeals,
St. Louis District,
Division Four.

May 24, 1977.

Motion for Rehearing and/or Transfer Denied July 21, 1977.

Paul Brackman, Clayton, Justin C. Cordonnier, St. Louis, for appellant.

Martin Schiff, Jr., Webster Groves, for respondent.

ALDEN A. STOCKARD, Special Judge.

William R. Hall appeals from the decree of dissolution entered under the Dissolution of Marriage Act, §§ 452.300–452.415, Laws of Missouri 1973, effective January 1, 1974.

Respondent has filed in this court a motion to dismiss the appeal on the basis that the notice of appeal dated November 24, 1975 was not timely. We need not rule that contention. On December 12, 1975, pursuant to a request by appellant, and as authorized by Rule 81.07(a), this court issued its special order permitting appellant to file a late notice of appeal which was done within the time authorized. The motion to dismiss the appeal is overruled.

Neither party contends the marriage was other than irretrievably broken, and neither challenges those portions of the decree relating to child custody and the division of marital property. Appellant asserts, however, that (1) the court erred in ordering him to pay "any maintenance," and in the alternative, if the payment of some maintenance was proper, then the court "grossly abused" its discretion in awarding maintenance in the sum of $700.00 per month; and (2) the court "grossly abused" its discretion in awarding the sum of $430.00 per month for each of the three minor children as child support.

The parties were married in 1957, and separated in August 1974. Prior to trial they agreed on the division of the marital property. The judgment of the trial court awarded respondent certain specified items of property, and then awarded to appellant "the balance of all marital property, subject to any and all indebtedness thereon." That division of the marital property, as itemized in appellant's brief, is as follows:

### Appellant
#### Assets

| | |
|---|---|
| 1,700 shares of Kearney National | $ 8,075.00 |
| 1,304 shares of Louisiana & Southern Life Ins. | 3,580.00 |
| Powers, Carpenter & Hall stock | 27,130.00 |
| Treasury Bill | 40,000.00 |
| Miscellaneous stock | 8,000.00 |
| One-Half Tax Refund | — |
| Oil Leases | 1,220.00 |
| | $88,005.00 |

#### Debts

| | |
|---|---|
| Boatman's Bank | $24,430.00 |
| Note to R. W. Powers | 11,900.00 |
| | $36,330.00 |
| BALANCE | $52,675.00 |

### Respondent
#### Assets

| | |
|---|---|
| Family residence | $40,000.00 |
| Furniture, furnishings, fixtures and appliances | 5,000.00 |
| Prudential Federal Savings and Loan | 11,700.00 |
| Lafayette Federal Savings & Loan | 1,200.00 |
| One-Half Tax Refund | — |
| 1968 Pontiac Automobile | — |
| | $57,900.00 |

#### Debts

| | |
|---|---|
| House Mortgage | $15,000.00 |
| BALANCE | $42,900.00 |

Appellant listed the Treasury Bill in a financial statement filed with the court at $50,000.00. He testified however, that it is "actually $40,000.00."

We find no reference in the final judgment to an award to respondent of the Lafayette Federal Savings & Loan account in the amount of $1,200.00, and as previously noted the "balance of all marital property" not specifically awarded to respondent was awarded to appellant. We

note that neither appellant nor respondent listed this account in their itemized statement of "cash and deposit accounts." Respondent referred to it in her testimony when she stated that at one time subsequent to the separation she used some of her account at "Lafayette Federal" to meet expenses, but there is no explanation of its source. We also note that in the judgment of the court entered on July 31, 1975, "the individual savings account of respondent at Lafayette Federal Savings & Loan Assn" was awarded to respondent, but without explanation this award was not made to respondent in the final judgment dated November 4, 1975. If this Savings and Loan account is not marital property, (but appellant lists it as such in his brief and there is no challenge, to this listing by respondent), the court did not "set [it] apart" to respondent as such, as contemplated by § 452.330. We consider that the parties agree that this account is the property of respondent.

Most if not all of the items of marital property awarded to appellant are in fact or potentially income producing. On the other hand, the largest item of marital property awarded to respondent is the house and its contents which is not income producing.

Appellant is employed by Powers, Carpenter and Hall, Inc., a consulting firm for various insurance plans, and by reason of the withdrawal of one of the members of the firm and the purchase of his stock, appellant now owns fifty percent of the corporate stock. For the four years immediately prior to the separation of the parties, appellant's income was as follows:

| Year | Adjusted Gross | Net |
|------|----------------|-----|
| 1971 | $75,431.00 | $50,000.00 |
| 1972 | 87,343.00 | 59,000.00 |
| 1973 | 87,912.00 | 57,000.00 |
| 1974 | 81,000.00 | 54,000.00 |

During each of the above four years Powers, Carpenter & Hall, Inc. paid into a profit sharing plan for appellant's benefit approximately $11,000.00. The company also provided certain other benefits including $45,000.00 for "Employee Life Insurance," life insurance in the amount of $5,000.00 on respondent and $1,000.00 on each child, "ac-cidental death benefits" in the amount of $160,000.00, "long term disability benefits" to a maximum of $1,200 a month, and a comprehensive medical care plan for himself and "family" with a medical reimbursement plan for sums not covered "up to a certain amount." The company also furnished appellant a leased automobile, "reasonable" entertainment expenses, and it pays his dues at the St. Louis Club.

During the "bulk" of the marriage respondent was not employed. There is no evidence concerning her training or experience, except some qualifications may be presumed by reason of the fact that approximately one month after the separation she obtained employment as a teacher's assistant at the North Glendale School in the Kirkwood system at a salary of $250 a month which resulted in a take-home pay of $195 a month. At the time of trial she had obtained new employment, but had not started to work, as a teacher at the Rossman School with a salary of $583.00 a month which would result in approximately $430.00 a month take-home pay. The North Glendale School was within walking distance from her home, but the Rossman School is a sufficient distance from her home to require transportation.

At the time of trial, July 1975, the parties' three children were 17, 15, and 11 years of age. The two oldest were enrolled in a private school. The oldest, a girl, would complete the 12th grade, in June 1976. She planned to go to college and had discussed those plans with her father. The boy had three more years of high school, was a good athlete and particularly as a tennis player, a sport in which appellant actively participated and in which he encouraged his son to participate. The son played in various tennis tournaments, and appellant admitted that "in the past" his participation required a "substantial amount" of money. The youngest child, was entering her last year of elementary school at a public school. Appellant testified that he was "not sure" if he planned the same type of education, that is, at a private school, for her, but the deciding factor would be "money." He

stated that she was a "fine little athlete" and showed "quite a bit of polish at track."

Prior to trial both parties filed financial statements of their estimated income and expenses. Appellant's estimated monthly income after taxes was $4,093.23. His estimated monthly personal expenses were ·$3,795.94. This amount included $500 for an apartment including utilities, $200 for "car operation, maintenance, repair and insurance," $1,350 to respondent for maintenance and child support pursuant to an order of the court, and $100 to his mother. It also included $250 for food, $40 for a maid, and $125 for "vacation with children." Expenses "for children only," apparently in addition to child support, were listed at $20 a month for medical and dental and $50 for recreation. The last two items for the children brought the monthly total to $3,865.94. There is no explanation for the $200 monthly item for automobile expenses in view of appellant's testimony that his employer furnished him "maintenance and car expenses," or why some or all of the medical expenses were not covered by the comprehensive medical plan provided by appellant's employer.

Respondent's gross wages were $250 a month, or a net of $195. Her estimated monthly personal expense was $1,325. We note several items. Her monthly automobile expense was listed at $57 as compared to $200 by appellant, and her estimate for food for herself was $50 a month as compared to appellant's estimate of $250 for himself. In fact, her estimate for food for herself and the three children was only $200 a month, or $50 less than appellant's estimate for food for himself alone. She also included an expense item of $217[1] a month to maintain her mother in a rest home, and her estimate for utilities (water, electricity, gas, telephone) was $87. Her estimate of the monthly expenses for three children, other than school tuition, was $515. Tuition at the private school for the two older children was estimated at $400 a month by respondent in the statement of expenses, but she testified that it averaged $450 a month.

At the trial, respondent testified that after the separation appellant gave her $2,070 a month, from which she paid the bills and maintained the house, but the "large bills" were paid from savings. This continued until January 1, 1975, when appellant reduced the amount to $1,000.00, but upon application the court ordered payment to her, pending final judgment, of $1,350 which consisted of $600 maintenance and $750 child support. Respondent testified that this was not sufficient to meet all expenses and it was necessary to use $1,400 from the Prudential Savings and Loan Account and some from Lafayette Savings & Loan. Respondent also expressed the need for a second automobile since she would be working full time at a place too far from home to walk, and the numerous activities of the children required transportation for them. Her testimony concerning some of her estimates of expenses is not clear in that it cannot be determined with certainty what is and what is not included. However her final estimate was that her expenses for herself and the children would be $2,050 a month, and when tuition for the private school was included the total would be approximately $2,500 a month.

The trial court did not make specific findings of fact, but by its final decree awarded respondent maintenance in the sum of $700.00 a month and $430.00 per month as support for each child, or a total of $1,990.00.

Pursuant to the scope of our review as set forth in *Murphy v. Carron*, 536 S.W.2d 30, 32 (Mo.banc 1976), "the decree or judgment of the trial court will be sustained by the appellate court unless there is no substantial evidence to support it, unless it is against the weight of the evidence, unless it erroneously declares the law, or unless it erroneously applies the law."

---

1. Respondent testified that she had been paying $209 a month but that the rate was to be increased $18 a month.

As pointed out in *Brueggemann v. Brueggemann,* 551 S.W.2d 853 (Mo.App.1977) (April 5, 1977), § 452.335 now controls questions of maintenance in dissolution of marriage proceedings, and it constitutes a marked departure from the prior concepts pertaining to alimony. The statute directs that "the court may grant a maintenance order to either spouse, but only if it finds that the spouse seeking maintenance (1) Lacks sufficient property, including marital property apportioned to him, to provide for his reasonable needs; and (2) Is unable to support himself through appropriate employment * * *." The term "reasonable needs" is not defined in the statute, but in the *Brueggemann* case it was pointed out that factors relating to fault (except as to the conduct of the party seeking maintenance) are eliminated from consideration, and that the provisions in the statute relating to earning capacity of the spouse seeking maintenance and the division of the marital property as the principal means of providing for the reasonable needs, indicate an emphasis on the self-sufficiency of both parties following the dissolution. It was recognized, however, that in a marriage of lengthy duration where one spouse has foregone career development, the marital standard of living may serve as a guide in computing the spouse's reasonable needs. It is specifically directed by § 452.335 that the court consider the earning capacity of the spouse seeking maintenance and the division of property, and in the *Brueggemann* case it is stated that "the focus on our statute seems more specifically on income-producing property."

Of the marital property awarded to respondent, only the Prudential Federal Savings and Loan account and the Lafayette Savings & Loan account are income producing. These accounts if maintained at the amounts shown at the time of trial would produce approximately $65 a month. Respondent received the previously shared residence of the parties with an indebtedness of $15,000, and the interest on that amount, which respondent is to pay, more than offsets the income on the Prudential and Lafayette accounts. There is no net income from the marital property awarded to appellant.

In his brief appellant makes no challenge to the items of personal expense respondent listed for herself, except the payment to her mother. But as previously noted, in his statement of monthly expenses he listed a payment to his mother. In an attempt to demonstrate that there should be no award to respondent for maintenance, appellant takes the sum of $1,325.00, the total of expenses listed by respondent on her statement of income and expenses filed with the court prior to trial, and then subtracts therefrom $429, which he asserts is three-fourths of the expenses for maintaining the house. This should be subtracted, he says, because the total cost of maintaining the house should be allocated equally between respondent and the three children. We note, however, that in his subsequent discussion concerning the award for support of the children, there is no concession that any award for child support should be increased by this amount. We consider it the responsibility of the parent having custody, in this case the respondent, to provide the home for the children, and all the reasonable expenses of that home constitute reasonable needs of respondent.

We decline to rule in this case whether, as a matter of law, payments by a spouse of the nature made by respondent for the benefit of her mother can in no event constitute a part of "reasonable needs." We find the award for maintenance not to be improper when that expense item is excluded from respondent's "reasonable needs."

The items of expense of respondent which appellant does not challenge, that is $1,325 a month less $217 for respondent's mother, results in the "reasonable needs" of respondent being $1,108 a month. Accepting the principle that these needs should be met by respondent if possible, we subtract $430 therefrom, her take-home pay from employment, and the result is $678, the additional amount per month necessary for respondent to meet her "reasonable needs."

This does not take into consideration that in her testimony at trial, respondent's estimates of her expenses were greater than she had previously listed them on the statement. Of course, the court was not bound by her earlier estimates, and we do not know on which estimate its award of maintenance was based. The court made an award of $700 a month for maintenance. This is $22 more than respondent's pretrial estimate but apparently would be less than her estimate at trial. In matters of this nature, the court cannot be expected to make an award to the precise dollar, and the award made is within a reasonable tolerance of the proof. Not only was the court authorized to make an award of some maintenance, we find no abuse of discretion in the amount of the award that was made.

Appellant concedes in his brief that "His income, compared to Respondent's, justifies a finding that he is the proper party to support [the] children." In his argument, however, he does not set forth specific objections to any of respondent's items of expense, except that "respondent if she wishes may decide to have her son complete his high school education" at a private school, "but Appellant should not be required to pay the costs of an education he does not personally believe to be proper or necessary." We note here that appellant testified that he was the one who originally enrolled the older girl and the boy in the private school, and absent some showing of hardship on appellant, and there is no such claim, we see no reason why the trial court was not justified in making an award for child support to complete the education program started by appellant.

This does not however, result in the award of $430 a month for child support for each child being proper. Respondent shows necessary expenses for the three children, other than school tuition, at $515 a month. This is an average of $171.66 a month per child. The youngest child attends a public school where there is no tuition, and in view of the evidence we do not see how an award of $430 a month for her can be justified. The other two children have a tuition of $225 a month each, which would result in a total monthly expense for each of $396.66. It is true that the oldest girl has now graduated from the private school, but the award is based on the facts before the court at the time the award was made, and the award continues until modified or changed by the court. Also the court could take into consideration that the older girl would have additional or other expenses at college, and the award made could have been fashioned on that basis.

In view of the evidence an award for support for the youngest child, with a reasonable allowance for the uncertainty in the estimates, can not be justified in excess of $200 a month, but the awards for support for each of the two oldest children, with said reasonable allowances, clearly was within the discretion of the trial court.

The cause is remanded to the trial court with directions to set aside the award for support for the youngest child in the amount of $430, and enter an award in the amount of $200 as of the date of the final judgment from which the appeal was taken, and as amended the judgment is affirmed.

SIMEONE, C. J., and NORWIN D. HOUSER, Special Judge, concur.