Marvin O. CHRISTIANSON,
Petitioner-Respondent,

v.

Susan CHRISTIANSON (Wallinger),
Petitioner-Appellant.

No. 10740.

Missouri Court of Appeals,
Southern District,
Division Two.

Dec. 6, 1979.

Motion for Rehearing and for Transfer
Denied Jan. 2, 1980.

Dale H. Close, Richland, for petitioner-respondent.

Charles M. Wesley, Waynesville, for petitioner-appellant.

MAUS, Judge.

This is an appeal from an order modifying a decree concerning the custody of Carl M. Christianson. During the marriage of Marvin O. Christianson and Susan A. Christianson, two children were born: Susanna B. Christianson, on December 9, 1965, and Carl M. Christianson on August 30, 1968. Upon their joint petition their marriage was dissolved on December 15, 1975. Except for the provision that the father should have custody of Carl, a separation agreement was approved. The dissolution decree placed Susanna in the custody of her mother, with an allowance for her support of $65.00 per month. Carl was placed in the custody of his father with the direction that he be permitted to live with his mother. There was no provision for the support of Carl. The parties were granted reasonable visitation.

During the marriage of Richard T. Wallinger and Rosetta Wallinger, three children were born: Richard Brian Wallinger on October 10, 1963; David Norman Wallinger on March 7, 1965; and Sean Walter Wallinger on March 8, 1972. Upon their joint petition their marriage was dissolved on December 15, 1975. Richard and Sean were placed in the custody of their mother with an allowance of $100.00 per month per child for their support. David was placed in the custody of his father.

Prior to and at the time of the dissolutions both men were Sergeants First Class in the Army stationed at Fort Leonard Wood. Susan Christianson was unemployed. Rosetta Wallinger was employed as a secretary at the Fort. The Sergeants were provided living quarters on the Fort. At the time of the hearings on the motions to modify in February and April, 1977, the employment status was the same with each Sergeant earning approximately $1012.00 per month and Rosetta earning approximately $426 per month. However, Marvin O. Christianson had married Rosetta Wallinger and Richard T. Wallinger had married Susan A. Christianson. As a result, Richard and Sean Wallinger lived with Marvin Christianson and Rosetta Wallinger Christianson; David Wallinger, Susanna Christianson and Carl Christianson lived with Richard T. Wallinger and Susan Christianson Wallinger.

On June 17, 1976, Marvin Christianson filed his motion to clarify or modify the custody decree and thereby gain custody of Susanna and Carl. This was followed by Susan Christianson Wallinger's counterpleading seeking a declaration of her custody of Carl and for an allowance of $150.00 per month for his support; by Rosetta Wallinger Christianson's motion to gain custody of David Wallinger; and by Richard T. Wallinger's motion to gain custody of Richard Wallinger and Sean Wallinger. Each of the motions alleged substantially similar bases for modification: interference with visitation and estrangement. Although apparently not formally consolidated (this is not clear from the record), the cases were treated as consolidated for the purpose of the hearings.

The motions for a change of custody were denied except custody of Carl Christianson was placed in Marvin Christianson without the provision that he be permitted to live with his mother. Each noncustodial parent was granted reasonable visitation and temporary custody of approximately thirty-five days each summer and two weeks alternate Christmas seasons. It was stipulated that Judge Moore who heard the dissolution would testify the reason the decree of dissolution placed Carl in the custody of his father, but was to live with his mother, was so that Sergeant Christianson would not have to move from his quarters. An objection to this testimony as not relevant was

sustained. Irrespective of that rejected testimony, in effect, the order of the trial court took Carl from the custody of his mother and placed him in the custody of his father. Susan Christianson Wallinger appeals from that order.

The evidence was voluminous and in general consisted of similar charges and countercharges. The trial court evidently found each of the four parties involved to be a fit parent as he left custody of at least one child with each parent. *Clouse v. Clouse*, 545 S.W.2d 402 (Mo.App.1976). This court finds no reason to disturb that determination. The transcript does reveal growing bitterness and recrimination between the reconstituted couples, no doubt to the detriment of the children. A review of the evidence, except as it directly pertains to the change in custody of Carl is unnecessary. Marvin Christianson's complaint may be summarized: He was denied visitation, although he specified only four instances of restrictions. He related an incident when he picked up Carl from school and was questioned by the C.I.D. He admitted since July, 1976, there hadn't been to many denials. He generally asserted he could not participate in decisions concerning Carl's clothing, activities or religious or moral training. It developed that the Wallinger's and Carl attended a church, whose beliefs to some extent interferred with visitation and activities. However, at one time, Marvin and Susan had been members of this church and planned to raise their children in that church. He did not plead or testify to any complaints concerning the tenents of that church. Marvin did complain he was not informed when Carl had a minor dog bite, but he admitted he too would have taken him to the hospital on the Fort. He reported that upon two occasions he was told his children said they didn't want to see him, but was also told they cried to see him. He also complained that when he wanted to take Carl on a vacation to Michigan, Susan insisted he take Susanna and David. But he admitted he wanted to take all five children. Susan countered that Carl did visit with his father twice each week; she did consult with Marvin, citing instances concerning swimming lessons and summer camp; when Marvin had not seen Susanna, she did call him and tell him his daughter was crying to see him. She also recounted that in the 14 months since the dissolution Marvin had contributed $115.00 toward the support of his son.

The court interviewed all of the children but Sean. Carl unequivocally stated he wanted to live with his mother. While not directly involved, Richard Wallinger (in his mother's custody) upon his first interview stated he wanted to live with his father, that his mother tried to turn him against his father by telling him about the bad things his father had done.

The trial court made some general findings of fact which included: there was extreme dislike between the couples; the Wallingers were dogmatic about their religion; and all parents, particularly the Wallingers, made an effort to poison the minds of the children. He found the interviews to be of little value because of parental influence. The court added as a boy gets older he should identify with his father. There was no specific finding concerning why Carl should be taken from the custody of his mother and placed in the custody of his father.

■ "The court shall not modify a prior custody decree unless . . . it finds, upon the basis of facts that have arisen since the prior decree or that were unknown to the court at the time of the prior decree, that a change has occurred in the circumstances of the child or his custodian and that the modification is necessary to serve the best interests of the child." § 452.410 V.A.M.S. This section is said to have codified the prior law of the state. *Randle v. Randle*, 560 S.W.2d 876 (Mo.App. 1977). The movant bears the burden of proving such facts that establish the change is necessary. *Randle v. Randle*, supra.

In the consideration of child custody cases a number of legal maxims have evolved which are, to one degree or another applied, or at least referred to, in determining what custody is in the best interests of the minor.

However, each custody case is to be determined on its particular circumstances, *Ray v. Ray*, 535 S.W.2d 267 (Mo.App.1976), and these maxims are not to be inflexibly applied. *Asbell v. Asbell*, 430 S.W.2d 436 (Mo. App.1968). But, as judicial expressions of common human experience they provide helpful guidelines in arriving at the best interests of the child.

■ Turning to the facts of this case, it is true that interference with visitation of and attempted alienation of a child from a parent may be the basis for modification. *R. L. S. v. J. E. S.*, 522 S.W.2d 5 (Mo.App. 1975). However, those factors in this case must be discounted as the basis for the trial court's action. Direct evidence of attempted alienation came from Richard Wallinger, and yet he was left in the custody of his mother who he said had told him bad things about his father. The evidence did not establish substantial interference with the father's visitation with Carl such as to frustrate the father's relationship with his son. *Downing v. Downing*, 537 S.W.2d 840 (Mo. App.1976). The church affiliation of the Wallingers is not a proper basis for modification. *Waites v. Waites*, 567 S.W.2d 326 (Mo. banc 1978). It is true that the increased age of the son is properly considered, but, "there was no evidence the increase in age of the child had brought about any circumstances which would make it in his best interest to change his custody." *D_____ I_____ M_____ v. P_____ D_____ M_____*, 548 S.W.2d 237 (Mo.App. 1977).

■ On the other hand, factors favoring continued custody in the mother were established. The mother is not employed and will be available to devote personal attention to her son. *Randle v. Randle*, supra. While not controlling, the clearly expressed desire of Carl to live with his mother should be considered. *Cook v. Lodes*, 560 S.W.2d 64 (Mo.App.1977); *Kanady v. Kanady*, 527 S.W.2d 704 (Mo.App.1975). It is not desirable that Carl be removed from the jurisdiction to Michigan where Marvin intended to move upon his impending retirement. *Randle v. Randle*, supra; *E_____ (S_____) v.*

*E_____*, 507 S.W.2d 681 (Mo.App.1974). Absent exceptional circumstances, Carl should not be separated from his sister Susanna. *Clouse v. Clouse*, supra. "The record does not support a showing of 'exceptional circumstances' which would justify separate custody." *Ray v. Ray*, supra, 535 S.W.2d at 268. With great reluctance this court must conclude that the evidence does not establish that removing Carl from the custody of his mother is a "modification . . . necessary to serve the best interests of the child." § 452.410 V.A.M.S.

■ The record demonstrates that the trial court found the sum of $100.00 per month per child a reasonable amount to be paid for the support of each of the two Wallinger children in the custody of their mother. The income of the two fathers is substantially the same. In addition the present Mrs. Christianson is employed. Considering the financial data in the record, this court determines $100.00 per month per child is a reasonable amount for Sergeant Christianson to pay for the support of his two children. The judgment in Case No. 10971 in the Circuit Court of Pulaski County pertaining to the custody of Carl M. Christianson is reversed and the cause remanded to the trial court with directions to amend that judgment by awarding custody of Carl M. Christianson to Susan Christianson Wallinger, granting reasonable visitation to Marvin O. Christianson with the right to have that child visit him from June 10 to July 15 each year beginning in 1980 and from December 22 to January 3 each alternate year beginning in 1980; said Marvin O. Christianson to provide adequate transportation for such visitation to and from the home of Susan Christianson Wallinger; and awarding to Susan Christianson Wallinger the sum of $100 per month to be paid by Marvin O. Christianson for the support of Carl M. Christianson. The decree is affirmed in all other respects.

All concur.