**Ruth Anne IJAMES, Petitioner-Appellant and Cross-Respondent,**

v.

**Burton Eugene IJAMES, Respondent-Respondent and Cross-Appellant.**

**Nos. 11659, 11705.**

Missouri Court of Appeals,
Southern District,
Division One.

Jan. 13, 1981.

James E. Bowles, Thurman, Nixon, Smith, Howald, Weber & Bowles, Hillsboro, for Ruth Anne Ijames.

Donald E. Lamb, Centerville, for Burton Eugene Ijames.

FLANIGAN, Judge.

In this proceeding for dissolution of marriage, Ruth Anne Ijames attacks that portion of the decree which awarded primary custody of her son Rex to his father, respondent Burton E. Ijames. The parties are parents of three children, Paul, who was born October 2, 1966, Margaret, who was born September 14, 1969, and Rex, who was born January 2, 1979.

The decree was entered on January 8, 1980, three weeks after the trial. By its terms the father was awarded primary custody of all three children. The mother was given temporary custody of them on the third weekend of every month. In addition the mother was given temporary custody for four weeks during the summer with leave to remove them from Missouri during that period. The mother was not required to make child support payments to the father and the father was not required to make child support payments to the mother during her temporary custody.

The mother asserts that the trial court erred in awarding primary custody of Rex to his father because the order "fails to give adequate weight to the tender years presumption and is against the weight of the evidence because it ignores the evidence of the mother's superior ability to care for Rex." The mother also contends that the trial court gave undue weight to the general policies of the law which look with disfavor upon separation of a child from his

siblings and upon removal of a child to another state.

In his cross-appeal the father asserts that the trial court erred in failing to require the mother to contribute to the support of the three children.

■ The scope of appellate review of the trial court's order awarding custody of Rex to the father is governed by Rule 73.01 V.A.M.R., as discussed in *Murphy v. Carron,* 536 S.W.2d 30, 32 (Mo.banc 1976). See *Pearson v. Pearson,* 575 S.W.2d 934, 935[3] (Mo.App.1978); *Johnston v. Johnston,* 573 S.W.2d 406, 412[12] (Mo.App.1978); *In re Marriage of L____,* 548 S.W.2d 262, 263[3] (Mo.App.1977). Under those authorities this court will not reverse the decree unless there is no substantial evidence to support it, unless it is against the weight of the evidence, unless it erroneously declares the law, or unless it erroneously applies the law. Setting aside a decree on the ground that it is against the weight of the evidence should be done "with caution and with a firm belief that the decree or judgment is wrong." *Murphy,* 536 S.W.2d at 32.

The parties were married to each other twice, first in 1961 and again in 1964. They separated in March 1979. At that time the mother moved from the family home at Ellington to an apartment in Piedmont. She was accompanied by Margaret and Rex, then eight weeks old. Paul expressed a desire to remain with his father and did so. Margaret stayed with her mother two weeks and then returned to the home of her father after differences arose between Margaret and her mother's landlady. The mother had custody of Rex until the trial.

During the nine months preceding the trial, while the parties were separated, the father and the two older children visited the mother and Rex frequently. About every third weekend the mother permitted the father to take Rex to the family home for a weekend visit. During the pendency of this appeal, with the approval of the trial court, Rex has remained with his mother.

Both sides have filed excellent briefs and most of the salient facts are undisputed.

Both parents are employed. The mother earns approximately $13,000 a year as a clerk for the Army Corps of Engineers. The father's income as a factory worker is approximately $17,000. The mother testified that she was in the process of moving to Little Rock, Arkansas, a move necessitated by an employment promotion.

The mother has been employed since 1970 but, after the birth of Rex, the father objected to her continuing to work. The mother testified that she left the family home because she did not love her husband any more.

Before the separation the parties lived in a four-bedroom house located on a 20-acre farm. They had built the house and their equity in the home place was approximately $42,000.

Prior to 1977 the father had a drinking problem and his resultant behavior was at times "obnoxious." There were four temporary separations. In 1977, however, he began to take a deep interest in religion. He quit drinking and became a frequent church attender.

It was the mother's testimony that when the father gave up drinking his conduct changed drastically for the better. The note which she wrote him on her departure stated that he was "every day growing into the strongest and best of Christian men. . . . You are the perfect husband and all a woman could ask a man to be."

During the first few months following the separation Gladys Brooks, the *mother's* aunt, lived at the family home and helped the father take care of the two older children and also Rex when he was there. Mrs. Brooks testified that the relationship between Rex and the two older children was good and that the father was able to take care of Rex and did so with the assistance of Margaret.

In August 1979 the father's 20-year-old niece, Beverly Ijames, moved into the family home and became the "housekeeper and baby sitter." Beverly testified that the father takes good care of the children and was able to take care of Rex during the periods he was there.

Bertha Schaedig, the father's sister, testified that she and her husband lived in Jefferson County where both of them were employed. Her husband had been employed at McDonnell Aircraft for 16 years. She testified that she and her husband had offered to move into the Ijames family home, giving up their respective employments, if that was necessary for the proper care of the children.

The original petition of the mother requested custody of all three children but the mother's trial testimony was that the affection of the two older children for her had been alienated, perhaps unintentionally, and they would be better off with their father. The original pleading of the father requested custody only of the two older children but at the trial he requested custody of all three.

The two older children were interrogated by the court in chambers. Paul testified that the mother had initially written letters to the children every day but the letters decreased and finally stopped. Paul said he telephones her "but she never phones me." He expressed his preference to live with his father and he wanted his father to obtain custody of Rex. Margaret testified that she preferred to live with her father and her two brothers. She said that her mother "never comes to visit me." From time to time she telephoned her mother but her mother did not telephone her.

The parents are in their mid-thirties. Rex's health is excellent and the record does not reflect any physical or mental health problem on the part of any of the persons involved. The mother testified that she had made arrangements in Little Rock for Rex to be cared for, during her working hours, by a woman "who is licensed by the state to provide day care for infants." The mother has a five-room apartment in Little Rock and has adequate facilities for the care of Rex. Neither parent claimed that the other parent was unfit to have custody of Rex.

In support of her contention that the trial court erred in awarding custody of Rex to the father, the mother cites *In re Marriage of Carmack*, 550 S.W.2d 815 (Mo.App.1977), and *In re Marriage of Zigler*, 529 S.W.2d 909 (Mo.App.1975), supporting the general principle that the mother usually is the better custodian for a child of tender years. The mother also advances the following arguments: There is no contention or showing that the mother is an unfit parent; the Little Rock environment would be favorable for the rearing of Rex; the willingness of Beverly to serve as the father's housekeeper may be only temporary and it is doubtful that the father's sister and her husband would sacrifice their home and respective employments in order to move in with the father; the father ordered the mother to make a choice between the home and her employment; the father "has gone from the extreme of drinking and carousing to being an absolute authority on morals" and the father's autocratic behavior would cause an emotional shock to Rex; the alienation of the older children from their mother was caused by the father; the father permitted Paul to have access to a letter from the mother's attorney, causing Paul to criticize his mother and to send her a religious tract; the two older children will be "out of Rex's life" before Rex is 10; the mother may be permitted to take the child out of the state if it is in the best interest of the child.

In seeking to uphold the custody decree of the trial court, the father cites authorities[1] supporting the general principle that in the absence of exceptional circumstances children should not be separated. The father also cites authorities[2] to the effect

1. *Christianson v. Christianson*, 592 S.W.2d 505, 508[6] (Mo.App.1979); *J. v. E.*, 417 S.W.2d 199, 203[7] (Mo.App.1967); *Kimble v. Kimble*, 399 S.W.2d 630, 634 (Mo.App.1966); *Davis v. Davis*, 354 S.W.2d 526, 531 (Mo.App.1962); *Poor v. Poor*, 167 S.W.2d 471 (Mo.App.1942); *Fisher*

*v. Fisher*, 207 S.W.2d 261, 262[1] (Mo.App. 1918).

2. *Christianson v. Christianson*, 592 S.W.2d 505, 508 (Mo.App.1979); *Markham v. Markham*, 429 S.W.2d 320, 323 (Mo.App.1968); *Good v.*

that the law may look with disfavor upon the removal of a minor child to another state. The father also advances the following arguments: Only he has requested custody of all three children; he and his family are able to take proper care of Rex; if the mother gets custody Rex will spend his days in a day care center but if the father gets custody he will be at home in the care of relatives; both older children love Rex and want him to live with them; the record will not support the mother's claim that he alienated the two older children from her; the mother admits that the father is a good husband, a good provider, and an excellent father; it was the mother who broke up the home; the infrequency of the mother's correspondence with the older children, her failure to visit them, and her general lack of communication with them cast doubt upon the depth of her maternal instincts; the mother told the father that if he were awarded custody of Rex she doubted that she would ever come to see him or the children any more.

In *In re Marriage of Shepherd*, 588 S.W.2d 174 (Mo.App.1979), in a situation where both parents were working, this court said: "If the mother is employed and gone from the home as is the father and has no more part in training and helping in the child's development than the father and if everything else is equal, she has no better claim for custody."

The trial court had the duty to "determine custody in accordance with the best interest of the child," § 452.375 RSMo 1978, and to consider "all relevant factors," including those enumerated in the statute.

 What custody arrangement was in the best interest of Rex? That is the issue which confronted the trial court with respect to the portion of the decree under attack by the mother. The question is easy to state and very difficult to answer. Under the standard of appellate review stated in the forepart of this opinion, this court has no firm belief that the trial court's

solution was wrong. The mother's appeal has no merit.

On his cross-appeal the father contends that the trial court abused its discretion by failing to require the mother to contribute to the support of the children. At the trial the father testified that in the event the court should award him custody of all three children he would not ask that the mother be ordered to contribute to their support. In dividing the principal marital asset, the equity in the home place, the trial court awarded ⅔ of the equity of $42,000 to the father and ⅓ to the mother. Neither side offered any evidence with respect to the amount required for the reasonable support of any of the children. Under the foregoing circumstances it cannot properly be said that the trial court abused its discretion in failing to order the mother, in the original decree, to contribute to the support of the children during that period when they are in the custody of the father. See *D.L.C. v. L.C.C.*, 559 S.W.2d 623, 625 (Mo. App.1977). The father's appeal has no merit. The judgment is affirmed.

TITUS and GREENE, JJ., concur.

---

*Good*, 384 S.W.2d 98, 100 (Mo.App.1965); *I. v. B.*, 305 S.W.2d 713, 719[6] (Mo.App.1957);

*Ackermann v. Ackermann*, 280 S.W.2d 425, 427[4] (Mo.App.1955).