Loretta C. TRUNKO,
Petitioner-Respondent,

v.

Leo TRUNKO, Respondent-Appellant.

No. 44836.

Missouri Court of Appeals,
Eastern District,
Division Three.

Nov. 2, 1982.

Merle L. Silverstein, Rosenblum, Goldenhersh, Silverstein & Zaft, Clayton, for respondent-appellant.

Eric F. Tremayne, Clayton, for petitioner-respondent.

CRANDALL, Presiding Judge.

This case involves an action for dissolution of marriage brought by respondent-wife (petitioner below) after a marriage of twenty-two years, in which she alleged that the marriage was irretrievably broken and that there was no reasonable likelihood that it could be preserved. Appellant-husband (respondent below), by his answer, denied under oath that the marriage was irretrievably broken. The trial court dissolved the marriage, divided the marital property, awarded custody of the minor children, maintenance, child support, and attorney's fees to the wife. We affirm the judgment as modified.

The standard for appellate review in a court-tried case requires this court to affirm the judgment unless there is no substantial evidence to support it, unless it is against the weight of the evidence, or erroneously declares or applies the law. *Murphy v. Carron*, 536 S.W.2d 30, 32 (Mo.banc 1976). Further, where there is a conflict in the evidence, the trial court has the prerogative to determine the credibility of the

witnesses, accepting or rejecting all, part or none of the testimony. *Prudential Property and Casualty Co., Inc. v. Cole,* 586 S.W.2d 433, 434 (Mo.App.1979). Within this narrow scope of review we now consider appellant's five allegations of error.

Appellant first contends that the trial court erred in granting a decree of dissolution because the evidence did not support the finding that the marriage was irretrievably broken with no reasonable likelihood that it could be preserved. He further argues that the trial court erred by failing to find one of the five elements required by § 452.320, RSMo (1978).[1] We disagree.

Section 452.320 provides:

      \*     \*     \*     \*     \*     \*

2. If one of the parties has denied under oath or affirmation that the marriage is irretrievably broken, the court shall consider all relevant factors, including the circumstances that gave rise to the filing of the petition and the prospect of reconciliation, and after hearing the evidence shall

(1) Make a finding whether or not the marriage is irretrievably broken, and in order for the court to find that the marriage is irretrievably broken, the petitioner shall satisfy the court of one or more of the following facts:

      \*     \*     \*     \*     \*     \*

(b) That the respondent has behaved in such a way that the petitioner cannot reasonably be expected to live with the respondent;

      \*     \*     \*     \*     \*     \*

The trial judge in this case, after finding the marriage of the parties was irretrievably broken and there was no reasonable likelihood that it could be preserved, made the following finding: "Respondent has not treated petitioner with kindness and affection and petitioner and respondent have been incapable of living together as man and wife in spite of repeated attempts at

separate counseling by both parties and together over a period of years."

"[I]t is mandatory that the trial court find, as an ultimate fact, that the marriage is irretrievably broken after considering all relevant factors and in so doing be 'satisfied' of one or more of five areas of fact set out in § 452.320.2(1)(a–e)." *In re Marriage of Pate,* 591 S.W.2d 384, 387 (Mo.App.1979). In this case the trial judge chose to make a specific finding appropriate to the facts of this case. It is obvious that he was satisfied of the fact that appellant had behaved in a way that petitioner could not reasonably be expected to live with him as required by § 452.320.2(1)(b).

■ Appellant argues that even if the trial court found one of requisite statutory elements, there was insufficient evidence to support it, citing *In re Marriage of Mitchell,* 545 S.W.2d 313 (Mo.App.1976). Unlike *Mitchell,* petitioner in this case specified behavior to support her conclusion that "there was no love or affection in the marriage." She testified that appellant had a violent temper which would erupt into "name calling tirades"; that she and respondent could not communicate with one another and their home life was volatile. She stated that on one occasion appellant grabbed her and threw her against the wall. This is substantial evidence sufficient to support the trial court's finding that the marriage was irretrievably broken and therefore the ruling did not constitute an abuse of discretion. *See Grummel v. Grummel,* 561 S.W.2d 442, 443 (Mo.App.1978).

The appellant's complaint regarding the division of marital property is premised upon his allegation that the trial court erred in its valuation of six partnership interests allocated to him. Appellant asserts that he received less of the marital assets than the court intended to award him due to the court's error in evaluating the partnerships.[2]

---

1. All statutory references are to RSMo (1978) unless otherwise noted.

2. The trial court allocated marital property valued at $1,082,650.50 to appellant and allocated marital property valued at $1,082,651.22 to petitioner. The decree lists totals of $1,803,-

The capital expenditure for the partnerships was approximately $298,000 with a projected gross return of $1,137,000 in tax deductions from 1973 to 1992. Appellant presented evidence that the total present value of the partnerships was $54,541. The trial court assigned a present value of $290,776 to the partnerships. This it was entitled to do. *Butcher v. Butcher,* 544 S.W.2d 249, 253 (Mo.App.1976). The value assigned to the partnerships by the trial court was in evidence as the approximate cost of the investment. This method of evaluation, though not as technical as that advocated by the appellant, was not contrary to the evidence before the court or the logical deductions therefrom. *Beckman v. Beckman,* 545 S.W.2d 300, 301 (Mo.App. 1976). The trial court did not abuse its discretion in evaluating the partnership interests at their cost to appellant and consequently appellant's claim that he actually received less than his intended share of the marital assets is without merit.

Appellant next contends the trial court's award of maintenance was not supported by any evidence that the wife was unable to provide for her reasonable needs.

Section 452.335 permits an award of maintenance where the spouse seeking maintenance lacks sufficient property to provide for his reasonable needs and is unable to support himself through appropriate employment.[3]

The trial court awarded petitioner marital property, most of which was income producing, valued at more than $1,000,000. In addition the wife's net income from employment was approximately $800 per month. In her income and expense statement, which was admitted into evidence, she listed monthly expenses of approximately $800.[4] This did not include an estimate of the wife's cost for shelter,[5] insurance, or clothing. Furthermore, she was unable to estimate the projected cost of these items at trial.

While there was evidence that appellant received a comfortable income from the practice of medicine and outside investments, there was no evidence of a luxurious life style. The family home, valued at $111,000, was large but necessarily so to accommodate the eight members of the Trunko family. None of the five family-owned automobiles were of the luxury type. There is no evidence of country club memberships, servants, expensive vacations, or sumptuous living quarters. Four of the Trunko children attend private parochial schools; however, that fact standing alone is insufficient to establish a life style of privileged status. *Compare In re Marriage of Pitluck,* 616 S.W.2d 861, 864 (Mo.App. 1981). While appellant's income could have supported a higher standard of living, the evidence showed that in fact it did not.

We acknowledge that awards of maintenance are within the discretion of the trial court but such awards must be "made within ... a reasonable tolerance of proof." *Hall v. Hall,* 553 S.W.2d 864, 869 (Mo.App.1977). We find there is no evidence to support the maintenance award of $1,000 a month other than the wife's request for that amount. In awarding maintenance the trial court abused its discretion; therefore that portion of the decree is reversed.

Appellant also claims the trial court's award of $750 per month as child support for each of the five unemancipated children was excessive in view of the evidence of the children's needs. Petitioner testified that $750 a month per child was

650.50 and $1,083,651.22 respectively. These figures apparently contain typographical errors. There was no separate property set apart to either spouse.

**3.** *That portion of § 452.335 addressing itself to* custodians of children whose circumstances make it appropriate that the custodian not be required to seek employment outside the home is not applicable to this case. The youngest children were 15 years of age and the wife was working outside the home at the time of the dissolution.

**4.** The wife claimed a monthly food expense of $600 for herself and the children, $120 of which we have attributed to the wife alone.

**5.** The family home was awarded to the husband at the parties' request.

required for the care of the five children. In petitioner's income and expense statement she listed total expenses for the care of the five children of $1,001 a month.[6] This figure did not include an estimate of the children's share of the cost of housing, clothing, or insurance; however, lack of detail in the income and expense statement does not preclude our review of the award. *See In re Marriage of Simpelo,* 542 S.W.2d 558, 562 (Mo.App.1976); *Suesserman v. Suesserman,* 539 S.W.2d 741, 743 (Mo.App. 1976). The difference between the amount of child support awarded, $3,750 monthly, and the cost estimate of the specific items listed in the petitioner's income and expense statement is $2,749. This sum is far in excess of the amount necessary to provide clothing, shelter, and insurance for five children. The child support award is therefore modified to an award of $500 per month per child for a total monthly award of $2,500.[7]

Appellant's final complaint is that the trial court erred in awarding the wife attorney's fees of $7,000 because the award is not supported by evidence of the wife's inability to pay her attorney. The trial court has discretion to award attorney's fees even in the absence of evidence of need. *Pederson v. Pederson,* 599 S.W.2d 51, 54 (Mo.App.1980); *In re Marriage of Ebinger,* 573 S.W.2d 738, 742 (Mo.App.1978). We find no abuse of discretion.

The judgment as modified is affirmed.

REINHARD and CRIST, JJ., concur.

---

**6.** This figure attributes $480 of the $600 total monthly food bill to the children. It does not include a tuition expense for the emancipated minor of $920 as that expense is not properly included in an award of child support to the wife. *Martin v. Martin,* 539 S.W.2d 756, 757 (Mo.App.1976).

**7.** Each of the Trunko children received approximately $4,000 interest income annually from trust funds established under the Uniform Gifts to Minors Act. § 404.010, *et seq.* Appellant argues that this income should be used to reduce the amount of his child support obliga-

tion. We disagree. There was evidence in the record that these funds were set aside for the education of the children in the event of husband's death or disability. Dissolution of the parties' marriage does not, in and of itself, change the original purpose of the trusts. In any event, when reviewing child support awards, the emphasis is not upon the financial resources of the child, but on the father's primary responsibility for support and his financial resources. *In re Marriage of C.S.B.,* 546 S.W.2d 186, 188 (Mo.App.1976).