**Rita B. MORGAN, Appellant,**

v.

**Larry D. MORGAN, Respondent.**

**No. 13826.**

Missouri Court of Appeals, Southern District, Division Three.

Nov. 25, 1985.

W. Swain Perkins, Thayer, for appellant.

H. Lynn Henry, Henry, Henry & Henry, P.C., and David H. Dunlap, West Plains, for respondent.

CROW, Presiding Judge.

Rita B. Wheeler ("Rita"), formerly Rita B. Morgan, appeals from a judgment entered May 17, 1984, modifying the child custody and support provisions of a decree of dissolution of marriage. The dissolution decree, dated May 5, 1980, had dissolved Rita's marriage to Larry D. Morgan ("Larry"), and had granted Rita primary custody of the three children born of that marriage: Shanna Dawn Morgan (born March 31, 1976), Bobby Joe Morgan (born March 4, 1977), and Crystal Joy Morgan (born October 3, 1978). The decree had ordered Larry to pay Rita child support of $40 per month per child.

The judgment of May 17, 1984, modified the decree of dissolution by awarding primary custody of all three children to Larry. Rita was granted temporary custody of all three beginning one week after the close of school in the spring and ending one week before the start of school in the fall. Additionally, Rita was granted temporary custody one weekend per month during the school year, and temporary custody during a portion of the children's Christmas vacation from school each year. Each party was ordered to support the children when the children were with such party, and neither party was ordered to pay child support to the other.

Rita insists that the evidence was insufficient to justify the modification, and she also maintains that Larry's interference with her "custodial rights" was a sufficient reason for the trial court to have denied Larry's motion for modification.

In evaluating Rita's contentions, we note that the trial court's authority to order the change of custody emanated from § 452.410, RSMo 1978, and that it was incumbent on Larry to prove that a change had occurred in the circumstances of the children or Rita since the decree of dissolution, and that the modification was necessary to serve the children's best interests.

*Henderson v. Henderson,* 622 S.W.2d 7, 8–9[1, 2] (Mo.App.1981); *Christianson v. Christianson,* 592 S.W.2d 505, 507 (Mo. App.1979). A general finding in favor of Larry on those issues appears in the judgment.

A judgment ordering a change in custody of a child may be reversed on appeal only if the judgment is not supported by substantial evidence, is against the weight of the evidence, or results from an erroneous declaration or application of the law. *In re the Marriage of Griswold,* 623 S.W.2d 560, 561[1] (Mo.App.1981); *Galeener v. Black,* 606 S.W.2d 245, 246–47[2] (Mo.App.1980). Where there is a conflict in the evidence, the trial court has the prerogative to determine the credibility of the witnesses, accepting or rejecting all, part or none of the testimony. *Ware v. Ware,* 647 S.W.2d 582, 583–84[2] (Mo.App.1983); *Trunko v. Trunko,* 642 S.W.2d 673, 674–75[2] (Mo.App.1982). In determining the sufficiency of the evidence, we must accept as true the evidence and permissible inferences favorable to the judgment, and disregard the contradictory evidence. *In re the Marriage of Scobee,* 667 S.W.2d 467, 468[3] (Mo.App.1984); *Ware,* 647 S.W.2d at 583–84[4].

Viewed in accordance with those rules, the evidence establishes that Rita, who was 20 years of age at the time of the dissolution, began living with one Mack Bates some time thereafter. The three children resided with Rita and Bates. At that time, Bobby Joe, the middle child, had a "medical condition" that had been diagnosed as "several allergies." Ultimately, it was discovered that he had "polyps in his throat that was obstructing his breathing." Surgery was performed and a "trach tube" was inserted in his throat.

Rita, describing the care that Bobby required, testified: "Well, I had to remove the inner tube—or the outer tube, and I had to clean it really well, boil it, and then clean it, and then clean all around that. And then I had to suction him out, three times a day." Rita added, "... I had to hold him down, him screaming his head off,

and suction him, or else he would have died, you know."

Bobby's condition, according to Rita, was one of the reasons for "a stroke and a nervous breakdown" that she suffered in the summer of 1981. This caused Rita to be hospitalized for over a month. During Rita's hospitalization, the three children were cared for by Rita's mother and Rita's sister, Helen Warson.

When Rita was released from the hospital, she was unable to take care of the children, so she and the children lived with her mother in Alton, Missouri.

About this time (September, 1981), Larry married his present wife, Eva Marie, with whom he was already cohabiting.

Not long afterward, Rita decided it would be better for Bobby Joe if he went to live with Larry. According to Rita, she thought Larry was living at Thayer, Missouri, at that time. Larry and Eva Marie testified, however, that they were then living in Elk City, Oklahoma. In any event, in late October, 1981, Bobby Joe was turned over to Larry's grandmother, Joy Frost, who resides in Oregon County, Missouri. Larry then picked up Bobby Joe from Mrs. Frost.

At the time Larry took custody of Bobby Joe, the eldest child, Shanna Dawn, was staying "the biggest part of the time" with Rita's sister, Helen Warson. That arrangement had begun in September, 1981, and it continued through December. During that time, Ms. Warson was living with a man to whom she was not married.

On January 2, 1982, while Larry and Eva Marie were visiting Larry's grandmother, Joy Frost, and the latter's husband, James, in Oregon County, Rita and Mack Bates brought Shanna Dawn to the Frost home to exchange gifts. At that time, Rita decided to allow Larry to take custody of Shanna.

Accordingly, Eva Marie prepared the following writing, dated January 2, 1982, which was signed that date by Rita and Larry:

"I Rita Morgan do here by give Larry Morgan custody of Shanna Dawn & Bob-

by Joe Morgan from this day Jan. 2, 1982 forward. I am also entitled to see said children with reasonable notice beforehand."

Rita, as we understand it, left Missouri shortly thereafter with Mack Bates, and resided with him in Texas. Apparently, the younger daughter, Crystal Joy, lived there with them.

On August 6, 1982, Larry and Eva Marie became parents of a daughter, Tralina Marie.

Not long afterward, as we read the record, Rita, who had learned where Larry was employed in Oklahoma, telephoned him about seeing Bobby and Shanna. Evidently, Rita's plan was for her and Crystal to ride from Texas to Elk City, Oklahoma, in a truck operated by a "boyfriend," Jimmy Cisco. Rita advised Larry about the arrangement, but Larry told her he did not want the visit to take place. At trial, he testified he refused "[b]ecause of the big mess that it would start."

In October, 1982, Rita returned to Oregon County, Missouri, and resumed living with her mother. She testified that she received a letter from Eva Marie stating that she (Rita) could call Shanna and Bobby at the home of Eva Marie and Larry. Rita telephoned Shanna and Bobby several times over the next few months.

Rita testified she phoned to speak to Bobby on his birthday (March 4, 1983), but was told by Eva Marie that she (Rita) was not going to talk to the children anymore.

Eva Marie admitted telling Rita that, but explained that she did so because, during a prior call, Rita had Crystal on the phone "calling names." Eva Marie testified: "And then Larry was real depressed after that. And he was my husband, and I loved him, and watching him suffer like that, hearing his own daughter calling him those names, it hurt me. That's why I told her."

About that time (March, 1983), Rita began living with John Wheeler, a man around 25 years of age. They set up residence in a house "right next door" to Rita's

mother's home. Crystal, as we understand it, lived there with them.

On Friday of "Easter weekend," 1984, Rita was driving past the residence of James and Joy Frost in Oregon County and saw Shanna and Bobby playing in the yard. Rita returned with a deputy sheriff, finding Larry and Eva Marie there. Rita was allowed to see Shanna and Bobby, but not allowed to take them with her.

Rita then contacted an attorney and obtained a writ of habeas corpus, enabling her to take custody of Shanna and Bobby. They remained in Rita's custody during the few weeks preceding the trial on May 14, 1984.

Rita married John Wheeler 10 days before the trial.

At time of trial, Larry and Eva Marie were residing in Oklahoma City, Oklahoma, having moved there from Elk City in May, 1983. Bobby Joe, who had lived with Larry and Eva Marie for some two and a half years prior to the habeas corpus, had been attending the first grade in Oklahoma City. Bobby "gets just about straight A's," and had been in a special class one day a week because he is "gifted." Bobby's throat condition, which had required medical attention at the time Larry obtained custody in October, 1981, had eventually been corrected by a "laser technique," and, at time of trial, was no longer a problem.

Shanna Dawn, who had resided with Larry and Eva Marie since January, 1982, was in the second grade in Oklahoma City prior to being returned to Rita per the habeas corpus in April, 1984. Shanna was described as a "B-plus-average" student.

Larry, at time of trial, was employed at a concrete plant where, in 1983, he had earned about $22,000. Eva Marie was a full-time housewife. She and Larry had been attending church regularly, taking Shanna and Bobby with them. According to Larry and Eva Marie, Shanna and Bobby have many friends in Oklahoma City, both at church and at school. Shanna and Bobby get along well with Tralina Marie.

Rita, at time of trial, was living with her husband, John Wheeler, who was employed by his uncle and was attending "the VA school." Rita was unemployed.

The trial court, in the presence of counsel for both parties, interviewed all three children on the record. § 452.385, RSMo 1978. Shanna, then age 8, and Bobby, then age 7, expressed the desire to return to Larry and Eva Marie. Crystal, age 5 years and 7 months, expressed no preference.

The evidence we have synopsized is, of course, not all of the evidence in the 266–page transcript. It is, however, in our opinion, the significant evidence supporting the judgment below.

In challenging the sufficiency of the evidence, Rita argues that Larry, after receiving Bobby, and later Shanna, "set out on a scheme to deprive [Rita] of any contact with the two children by denying her the right to see them while he lived in Elk City, Oklahoma, changing his telephone number whereby she could not contact [Larry] or the children by telephone, changing his residence from Elk City, Oklahoma to Oklahoma City, Oklahoma, without notifying [Rita] of the change of residence and making trips to Oregon County, Missouri, where [Rita] lived without notifying her of those visits or attempting to contact her upon his arrival so the children could see [her]."

While the evidence, viewed favorably to Rita, might well have supported such a conclusion, there was evidence from which the trial court could have reasonably found—and presumably did—that Larry's behavior was not so opprobrious.

Larry explained that after receiving Bobby and Shanna from Rita, he and Eva Marie returned to Oregon County with Bobby and Shanna only twice. The first occasion was in July, 1983, for "three or four days." According to Larry, he was then unaware of where Rita lived, and "didn't try to find out." The second occasion was when the habeas corpus proceeding was filed.

Larry testified that since the dissolution in 1980, he had talked to the youngest child, Crystal, on the phone, and that on one occasion he had asked Rita if he could have custody of Crystal. Larry quoted Rita as replying, "No, only if you take me back."

Larry conceded there had been minimal contact between him and Rita since the dissolution, but he attributed it to his inability to "keep up with" her changes in residence. In addition to Mack Bates, with whom Rita admitted living for "2 to 2½ years," and John Wheeler, with whom Rita admitted living for a year prior to their marriage, she also, according to Larry, dated Jimmy Cisco, the truck driver, and accompanied him on his trips.

Larry admitted changing his phone number after Eva Marie told Rita she could not phone the children anymore. This occurred shortly before Larry, Eva Marie, Shanna, Bobby, and Tralina moved from Elk City to Oklahoma City. Larry explained that he has no phone at his residence in Oklahoma City. He conceded he never gave Rita his residence address, but he pointed out that Rita had been able to contact him at his place of employment. The move from Elk City to Oklahoma City, according to Larry, was because he and Eva Marie found a church that was more to their liking, and because he could earn more money.

Admittedly, Larry's attitude regarding contact by Rita with Shanna and Bobby was, at best, indifferent and uncooperative, but the fact remains that for well over two years immediately prior to the habeas corpus, Shanna and Bobby resided with Larry and Eva Marie, to whom Shanna and Bobby desired to return at time of trial.

Courts recognize there is value in a child's being kept with the parent who has had custody for a long period of time, as against uprooting him and transferring him to a new environment. *Morrison v. Morrison,* 676 S.W.2d 279, 280 (Mo.App.1984); *Schmidt v. Schmidt,* 591 S.W.2d 260, 262[2] (Mo.App.1979); *Clouse v. Clouse,* 545 S.W.2d 402, 407–08 (Mo.App.1976). In ordering primary custody of Shanna and Bobby changed from Rita to Larry, the trial court did not remove Shanna and Bob-

by from the custody of a parent with whom they had been residing, but merely legitimated a *de facto* change in custody that had occurred with Rita's consent more than two years earlier. Since coming to live with Larry and Eva Marie, Shanna and Bobby had established themselves in school and church, had made friends, and were thriving physically and emotionally. In short, a significant change in the circumstances of Shanna and Bobby had taken place after the dissolution, in that they, for well over two years immediately preceding the modification trial, had resided with Larry and Eva Marie, adapting comfortably to that arrangement and forming a close bond with their half sister, Tralina.

We find the evidence sufficient to support the trial court's decision that the best interests of Shanna and Bobby will be served by allowing them to remain with Larry and Eva Marie.

The circumstances regarding Crystal, of course, were different than those of Shanna and Bobby. Crystal had been with Rita since the dissolution, and there had been little contact between Larry and Crystal.

It is noteworthy, however, that Crystal expressed no preference for living with Rita over living with Larry, despite Crystal's scant contact with Larry. Additionally, we note that Crystal, during her four years with Rita, lived in Rita's mother's home, lived with Rita and Mack Bates in both Missouri and Texas, lived with Rita during the time of Rita's association with Jimmy Cisco, and lived with Rita and John Wheeler during the year preceding their marriage.

While we do not pass judgment on Rita's morality, we recognize, as did *Mansell v. Mansell*, 583 S.W.2d 284 (Mo.App.1979), and *L.H.Y. v. J.M.Y.*, 535 S.W.2d 304 (Mo. App.1976), that Rita's life-style could adversely affect the development of Crystal's moral character and behavioral standards. Beyond that, the trial court could properly consider the effect on Crystal of the numerous changes in residence during her four years with Rita, including the adjustment necessitated by the introduction of first

one, and later a different, unrelated adult male into the household.

■ Moreover, the transfer of custody of Crystal to Larry reunites her with Shanna and Bobby. Absent exceptional circumstances, the children of divorced parents should not be separated. *Dutton v. Dutton*, 668 S.W.2d 585, 589[7] (Mo.App.1984); *In re the Marriage of Mihalovich*, 659 S.W.2d 798, 801[4] (Mo.App.1983); *Ray v. Ray*, 535 S.W.2d 267, 268 (Mo.App.1976). Crystal, unlike Shanna and Bobby, had barely begun her formal education. At time of trial, she had "graduated" from "Head Start," and was scheduled to begin kindergarten in the fall. Consequently, the change in custody should have little, if any, effect on Crystal's schooling.

■ The foregoing considerations leave us firmly convinced that the judgment below, with respect to all three children, is supported by substantial evidence, is not against the weight of the evidence, and involves no erroneous declaration or application of the law.

In so holding, we do not ignore Rita's contention that Larry interfered with her "custodial rights" to a degree sufficient to justify denial of his motion to modify. Specifically, Rita argues that Larry removed Shanna and Bobby from Missouri, denied her the right to see or phone them, did not notify her of their whereabouts, and allowed Eva Marie to become so involved with them that she (Eva Marie) came to consider herself their mother. In support of this contention, Rita relies on *K___ R___ (S___) D___ v. C___ D___ S___*, 646 S.W.2d 428 (Mo.App.1983), and *Christianson*, 592 S.W.2d 505.

We find neither case controlling. In *Christianson*, the noncustodial parent alleged interference with his visitation rights as one of his bases for modification, but the opinion held that the alleged interference, along with the other evidence relied on by the noncustodial parent, was insufficient to support a modification. In *K___ R___ (S___) D___*, denial of the noncustodial parent's visitation rights on several

occasions was but one of the bases supporting the change of custody. The facts there, in the aggregate, are sufficiently different from those in the instant case that *K___ R___ (S___) D___* compels no reversal here.

As to Rita's allegation that Eva Marie now considers herself the mother of Shanna and Bobby, we note that the only evidence supporting that assertion was Rita's testimony that Eva Marie had made such statements to her (Rita) by telephone. The trial court, of course, was not required to believe Rita's testimony.

As to Larry's alleged interference with Rita's "custodial rights," we agree that he deserves no praise for his attitude regarding contact by Rita with Shanna and Bobby. Larry's conduct in that respect, however, affords no justification for overturning the trial court's decision.

Judgment affirmed.

FLANIGAN and MAUS, JJ., concur.

PREWITT, C.J., in separate opinion, concurs in result.

PREWITT, Chief Judge, concurring.

I concur in the result and in the analysis of the majority opinion except for two instances. I would not give any weight to Crystal's preference or lack of it. I believe that the feelings of a child, age 5 years, 7 months, as to her custody are so insignificant that there is no reason to seek those feelings or give them any consideration. I also do not think that Rita's previous "lifestyle" should be a factor under the circumstances of this case.